## HUMPHREYS *v.* McKISSOCK.

## WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY *v.* McKISSOCK.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

Nos. 296, 991. Argued April 8, 1891.—Decided May 11, 1891.

Several railroad companies combined to construct an elevator, to be connected with their respective roads, each to contribute an equal sum towards its costs, and each to receive corresponding certificates of stock in a corporation organized to take title to the elevator and to construct it. This arrangement was carried out. *Held,*

(1) That the interest of each company in it was as a stockholder in the company which constructed it;

(2) That no company had an interest in the property itself which it could mortgage;

(3) That such stock would not pass to a mortgagee of one of the railroads under a general description as an appurtenance to the road.

A railroad company joining in the construction of an elevator on land not belonging to it, and situated at some distance from its road, does not acquire an interest in it which will pass as an appurtenance under a mortgage of its railroad as constructed or to be constructed, and the appurtenances thereunto belonging.

THE two appeals in these cases are from the same decree. Both will be disposed of by the same decision, which will turn upon the effect of a mortgage, executed by a railroad corpora-

tion of railroad property, upon a subsequently acquired interest of the mortgagor in the stock of an elevator company. The material facts out of which the controversy arises are very fully and clearly set forth in the briefs of counsel. They are substantially as follows:

On the 15th of February, 1879, the St. Louis, Kansas City and Northern Railway Company, a corporation created under the laws of Missouri, owned a railroad extending in a northeasterly direction from Elm Flats in Davies County of that State, through the counties of Davies, Gentry, Nodoway and Atchison, to the boundary line between Missouri and Iowa. It was also the lessee for a term of years of a railroad extending from Council Bluffs, in Iowa, in a southeasterly direction, through the counties of Pottawatomie, Mills, Fremont and Page to a point on the boundary line, where the railroads connected.

On that day, for the purpose of securing the payment of 25 bonds, each for the sum of $1000, the railway company mortgaged its leasehold estate in the railroad in Iowa, and its title in fee to its railroad in Missouri, to the United States Trust Company of New York, as trustee. The property described in the mortgage is as follows:

"All and every part and parcel of the continuous line of railroad, and all right, title and interest therein, as now owned, leased and held by said St. Louis, Kansas City and Northern Railway Company, commencing at Elm Flats, near Pattonsburg, in the State of Missouri, and extending through the counties of Davies, Gentry, Nodoway and Atchison in the State of Missouri, and through the counties of Page, Fremont, Mills and Pottawatomie in the State of Iowa, to the city of Council Bluffs in said State, *as said railroad now is, or may be hereafter constructed, maintained, operated or acquired, together with all the privileges, rights, franchises, real estate, right of way, depots, depot grounds, side tracks, water tanks, engines, cars and other appurtenances thereunto belonging.*"

On the 10th of November, 1879, the St. Louis, Kansas City and Northern Railway Company was consolidated with the Wabash Railway Company of Illinois, Indiana and Ohio, and

the corporation thus formed took the name of the Wabash, St. Louis and Pacific Railway Company.

Afterwards, on the 17th of December, 1880, a corporation was formed under the laws of Iowa by certain parties named Dillon, Hopkins, Keep, Riddle and Perkins, known as the Union Elevator Company. Its articles of incorporation provided that its principal place of business should be at Council Bluffs; that its stock should be $500,000; and that the subscriptions to the stock should be paid in when called for by the board of directors. The parties who formed this corporation were officers of different railway companies doing business at Council Bluffs. Immediately after its organization the Elevator Company, as party of the first part, entered into a written contract with the Union Pacific Railway Company as party of the second part; the Wabash, St. Louis and Pacific Railway Company, as party of the third part; the Chicago, Rock Island and Pacific Railway Company, as party of the fourth part; the Chicago, Burlington and Quincy Railway Company, as party of the fifth part; the Chicago and Northwestern Railway Company, as party of the sixth part; and the Chicago, Milwaukee and St. Paul Railway Company, as party of the seventh part; in which each of the companies agreed to subscribe $100,000 to the capital stock of the Elevator Company, and to contribute equally thereto; and the Elevator Company agreed that in conducting its business it would not discriminate in favor of or against either of the companies, but would at all times serve them on equal terms.

In 1881 these companies subscribed for an equal amount of stock in the Elevator Company, and in 1881 and 1882 the elevator was erected at a cost of $280,000. When completed it was leased by the Elevator Company to certain parties, who afterwards operated it as tenants of that company. The different companies subscribed equal amounts for the construction of the elevator, which subscription was in reality only one-sixth of $280,000, and not one-sixth of $500,000, the authorized amount of its capital stock. Each, therefore, paid $46,666:66, and received its stock, except the Wabash, St. Louis and Pacific Railway Company, which paid only $41,666.66.

leaving $5000 due. For want of this last payment no stock has been issued to that company. It will be entitled to receive its proportional part of the stock upon the payment of that sum.

In 1884 the Wabash, St. Louis and Pacific Railway Company became insolvent, and on the 29th day of May of that year Solon Humphreys and Thomas E. Tutt were, in proceedings before the Circuit Court of the United States for the Eastern District of Missouri, appointed receivers of all its property, including the railroad from Elm Flats, Missouri, to Council Bluffs, Iowa.

In June, 1885, a bill was filed in the Circuit Court of the United States for the Southern District of Iowa, Western Division, by the United States Trust Company of New York, against the Wabash, St. Louis and Pacific Railway Company, to foreclose the mortgage of February 15, 1879, executed by the St. Louis, Kansas City and Northern Railway Company, (afterwards merged into the Wabash, St. Louis and Pacific Railway Company,) covering the road from Elm Flats to Council Bluffs. On March 3, 1886, that court appointed Thomas McKissock receiver of the premises and property described in the mortgage, with power and instructions to take possession thereof.

Previously to this, on January 6, 1886, the Circuit Court of the United States for the Eastern District of Missouri had made an order directing the receivers, Humphreys and Tutt, to transfer and surrender to the trustee of the mortgage, the United States Trust Company, or to any person or receiver appointed, at its instance, by the Circuit Courts of the States of Iowa or Missouri, in which the foreclosure suits brought by the trustee might at the time be pending, the entire line of railroad known as the Omaha Division of the Wabash, St. Louis and Pacific Railway Company, by which was meant the line extending from Elm Flats to Council Bluffs; and also all property, real and personal, pertaining to that division then in their possession and control.

Under the facts as thus stated the situation of the case was this: Humphreys and Tutt, as receivers of all the property of the

Wabash, St. Louis and Pacific Railway Company, appointed by the Circuit Court of the United States for the Eastern District of Missouri, claimed possession and the right to hold the interest of that company in the stock of the Elevator Company. On the other hand, McKissock, as receiver of the property described in the mortgage to the Trust Company, claimed the stock in the Elevator Company as covered by that mortgage, and demanded its transfer to him by Humphreys and Tutt. This being refused, he filed the present petition to enforce the demand. The court directed its reference to a special commissioner to take proofs and report the same with his findings of law and fact. He found the facts substantially as stated : and also that the elevator was immediately connected with the main line of the Wabash, St. Louis and Pacific Railway Company; that that company shipped large quantities of grain out of Council Bluffs over the Omaha Division ; that the elevator was erected for the sole purpose of storing and handling grain to be transported over the six railroads; that the erection of an elevator by the Wabash, St. Louis and Pacific Railway Company at Council Bluffs was necessary to the conduct of its business as a shipper of grain; and that the handling and shipping of grain could not be successfully carried on at Council Bluffs without one. As a conclusion of law he held that the elevator was a common appurtenance to the railways, and that the one-sixth interest therein of the Wabash, St. Louis and Pacific Railway Company was an appurtenance belonging to its line of railway, and was covered by the mortgage of February 15, 1879, and formed a part of the mortgage security. He, therefore, recommended the entry of an order directing that company and its receivers to execute and deliver to McKissock a proper assignment of the interest of that company and of the receivers in the elevator. Exceptions were taken to this report, but they were overruled by the court; the report was confirmed, and a decree entered that Humphreys and Tutt execute and deliver to McKissock, as receiver, a proper assignment of all the interest of the Wabash, St. Louis and Pacific Railway Company, or of themselves as receivers, in the Union Elevator. From that decree appeals were taken to this court.

Notwithstanding the decree speaks of the interest of the Wabash, St. Louis and Pacific Railway Company in the Union Elevator, it was stipulated that the company had no interest otherwise than as a stockholder in the property of the Union Elevator Company. The evidence before the commissioner also showed that the elevator was not immediately on the main line of the Wabash Company, as found by him, but was distant more than half a mile from it, and was only reached by passing over the tracks of another company.

*Mr. F. W. Lehmann* for appellants. *Mr. Wells H. Blodgett* filed a brief for same.

*Mr. Edward W. Sheldon* (with whom was *Mr. Theodore Sheldon* on the brief) for appellee.

That the acquisition and use of grain elevators by railway companies for storing and handling grain to be carried over their lines, are within the corporate powers of such companies, recent decisions leave no room for doubt. *New York & Harlem Railroad* v. *Kip*, 46 N. Y. 546; *Ill. Cent. Railroad* v. *Wathen*, 17 Brad. App. 582. The right of eminent domain may be used to acquire land for them. *In re N. Y. Central &c. Railroad Co.*, 77 N. Y. 248; *N. Y. Central &c. Railroad Co.* v. *Metropolitan Gas Light Co.*, 63 N. Y. 326; *In re Staten Island Rapid Transit Co.*, 103 N. Y. 251; *Miss. Valley Railroad* v. *Chicago &c. Railroad*, 58 Mississippi, 846, 896. When constructed, such elevators may be exempted from taxation, as part of a taxed railroad. *Pennsylvania Railroad* v. *Jersey City*, 49 N. J. Law, 540. Regarding the present case in the light of these adjudications, it would seem to be a necessary sequence that the interest of the Wabash Railway Company in the Union Elevator was acquired and used for railroad purposes. It is not disputed that the elevator in question was erected, and has ever since been exclusively used by its owners, the six railway companies and their successors, for the sole purpose of storing and transshipping grain carried over these companies' lines. They alone have made use of its facilities, and the witnesses are unanimous that the erection and main-

tenance of the elevator were indispensable to the conduct of the companies' grain traffic.

The interest of the Wabash Company in the elevator in question, was embraced in the mortgage of the "Omaha Division," under the description "other appurtenances." In presenting this case to the court below, the appellants' counsel laid much stress upon the technical rule that in the construction of deeds, land cannot be regarded as appurtenant to land. Even in its strict signification, this rule is subject to the qualification that land or other property essential to the beneficial use and enjoyment of the property granted, will pass as an appurtenance. *Whitney* v. *Olney*, 3 Mason, 280; *Sparks* v. *Hess*, 15 California, 186.

What is appurtenant to a railway, however, with its manifold purposes and complicated needs is, of course, a question having a far wider range and demanding a much more liberal treatment. Had the elevator in question been erected, owned and used by the Wabash Company alone, the conclusion seems clear that the lien of the mortgage would, under the foregoing authorities, have attached.

We are thus brought to determine whether a different conclusion is authorized by the fact that the property as a whole was owned equally by six separate railway companies, and their title thereto evidenced by equal amounts of the capital stock of the Union Elevator Company.

The form of the railway company's ownership does not affect the rights of the mortgagee. A mortgage by a railway company may cover stock of another corporation subsequently acquired by it. *Williamson* v. *New Jersey Southern Railway*, 26 N. J. Eq. 398.

But the interest involved in the present suit is more than naked shares of stock. When the six railway companies, in 1881, for the necessary purpose of storing and handling grain to be shipped over their lines, agreed, in order to avoid unnecessary expense in erecting and operating six separate grain elevators, to erect and operate one large elevator in common, there were several methods by which the ownership of their respective interests could have been evidenced. The title to the whole

property might have been held in common by the six companies. It could not be contended, we submit, that had that method been adopted, the one-sixth interest of the Wabash Company would not have become subject to the lien of the Omaha Division mortgage. *Toledo, Delphos &c. Railroad* v. *Hamilton*, 134 U. S. 305; *Central Trust Co.* v. *Kneeland*, 138 U. S. 414.

But the question involved here is *res judicata.* The identity of the interest of the Wabash Company in the elevator, with the interest claimed by petitioner, and of the deed of trust described in the decree of sale with the mortgage to complainant herein, is established.

As against the appellants, therefore, this decree of sale is a conclusive adjudication upon the following points:

1. That the interest in the elevator was acquired and used by the Wabash Company for railroad purposes.

2. That being so acquired and used, it passed both by the "general mortgage" and the prior mortgage to the complainant.

3. That the fact that the interest of the Wabash Company was that of a stockholder in the Elevator Company as well as that of an owner of the right to forever use the elevator, did not prevent the lien of both the "general mortgage" and the mortgage to the complainant from attaching thereto.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The commissioner in his report committed a manifest error in holding that the Wabash Company possessed any interest in the property of the Elevator Company. The facts found by him as to the organization of the latter, the subscription to its stock, the construction of the elevator and its lease to others, show beyond controversy the independent existence of that corporation, and that the railway company had no specific interest in its elevator or other property which it could mortgage. It was a mere stockholder in the Elevator Company. If there had been any doubt on this point, from the

evidence before that officer on which he found the facts stated, it must have been removed by the stipulation of the parties.

The court below, therefore, erred in confirming the commissioner's report in that particular and entering a decree that Humphreys and Tutt, as receivers of the Wabash Company, execute and deliver to the petitioner, McKissock, an assignment of an interest supposed to be held by it, or by them as such receivers, in the Union elevator. That railway company had no interest which it could assign, the building belonged to the Union Elevator Company, and the railway company was entitled by its subscription, when paid, only to a certain proportion of its stock. Both the commissioner, and the court, in confirming his report and entering the decree mentioned, seem to have confounded the ownership of stock in a corporation with ownership of its property. But nothing is more distinct than the two rights; the ownership of one confers no ownership of the other. The property of a corporation is not subject to the control of individual members, whether acting separately or jointly. They can neither encumber nor transfer that property, nor authorize others to do so. The corporation — the artificial being created — holds the property, and alone can mortgage or transfer it; and the corporation acts only through its officers, subject to the conditions prescribed by law.

In *Smith* v. *Hurd*, 12 Met. 371, 385, the relations of stockholders to the rights and property of a banking corporation are stated with his usual clearness and precision by Chief Justice Shaw, speaking for the Supreme Court of Massachusetts, and the same doctrine applies to the relations of stockholders in all business corporations. Said the Chief Justice : " The individual members of a corporation, whether they should all join, or each act severally, have no right or power to intermeddle with the property or concerns of the bank, or call any officer, agent or servant to account, or discharge them from any liability. Should all the stockholders join in a power of attorney to any one, he could not take possession of any real or personal estate, any security, or chose in action; could not collect a debt, or discharge a claim, or release damage arising

from any default; simply because they are not the legal owners of the property, and damage done to such property is not an injury to them. Their rights and their powers are limited and well defined."

The commissioner also committed a manifest error in his report in holding that the elevator was a common appurtenance to the railroads of the several companies having the stock of the Elevator Company; and that one-sixth interest therein was an appurtenance to the railroad of the Wabash Company. It is difficult to understand the course of reasoning by which a certificate of stock in an independent corporation can be an appurtenance to a railroad. If stock in the company in question could be considered an appurtenance to a railroad, by the same rule stock in a bank, or in any other corporation, with which the railroad did business, might be so considered.

But were we to consider the Wabash Company as possessing a separable legal interest in the elevator, it would not be appurtenant to its railroad. That building is situated at some distance from the railroad — more than half a mile — and is erected on land not belonging to that company, but leased from the Union Pacific Railway Company, and can only be reached by crossing the tracks of another company. Had the elevator been constructed upon property covered by the mortgage, it might have been contended that it fell, to the extent of the one-sixth interest, under the mortgage, as one of the depots of the company. The term "depot" in the mortgage is not necessarily limited to a place provided for the convenience of passengers while waiting for the arrival or departure of trains. It applies also to buildings used for the receipt and storage of freight, which, when received, is to be safely kept until forwarded by the cars of the company or delivered to the owner or consignee. Such a building, whether existing at the time of the mortgage, or constructed afterwards upon the property of the company covered by it, may pass under the mortgage as one of its depots, but will not pass as an appurtenance to the property previously existing. A thing is appurtenant to something else only when it stands in the relation

of an incident to a principal, and is necessarily connected with the use and enjoyment of the latter. *Harris* v. *Elliott*, 10 Pet. 25, 54; *Jackson* v. *Hathaway*, 15 Johns. 447, 455; *Linthicum* v. *Ray*, 9 Wall. 241. Of two parcels of land one can never be appurtenant to the other, for though the possession of the one may add greatly to the benefit derived from the other, it is not an incident of the other or essential to the possession of its title or use; one can be enjoyed independently of the other. As said by the Court of Appeals of New York, in *Woodhull* v. *Rosenthal*, 61 N. Y. 382, 390: "A thing 'appurtenant' is defined to be a thing used with and related to or dependent upon another thing *more worthy*, and agreeing in its nature and quality with the thing whereunto it is appendant or 'appurtenant.' It results from this definition that land can never be appurtenant to other land or pass with it as belonging to it. . . . All that can be reasonably claimed is, that the word 'appurtenances' will carry with it *easements* and *servitudes* used and enjoyed with the lands for whose benefit they were created. Even an easement will not pass unless it is necessary to the enjoyment of the thing granted."

Under the term "appurtenances," as used in the mortgage in question, only such property passes as is indispensable to the use and enjoyment of the franchises of the company. It does not include property acquired simply because it may prove useful to the company and facilitate the discharge of its business. A distinction is made in such cases between what is indispensable to the operation of a railway and what would be only convenient. *Bank* v. *Tennessee*, 104 U. S. 493, 496. The elevator in question was at all times under an independent management and was used in the same manner as any other warehouse not on the premises of the railway company to which it sent cars for freight.

The court, therefore, erred in confirming the report of the commissioner in the particular mentioned, and in passing its decree upon the assumption that the Wabash Company had a legal separate interest in the elevator, and that the mortgage attached to such interest. That company, as already stated, possessed only stock in the Elevator Company; and the owner-

ship of stock in one company has never been adjudged to be an appurtenance to a line of railroad belonging to another company.

There is no merit in the position that the question involved in these appeals was adjudicated by the decree foreclosing a subsequent mortgage of the Wabash Company. It appears that on June 1, 1880, a general mortgage was executed by that company to the Central Trust Company of New York upon different lines of railroad, including the Omaha Division. When this was foreclosed the decree declared that the mortgage was a lien on the interest of the Wabash Company in the elevator at Council Bluffs, the court erroneously assuming that the company was possessed of an interest therein. That supposed interest was ordered to be sold, together with other property covered by the mortgage, without affecting the lien of numerous other contracts, leases and senior divisional mortgages. The object of the suit was to have a sale of the property covered by that mortgage, without in any manner affecting the rights of other mortgage creditors. The decree itself declared that neither it, nor any sale under it, should in any way prejudice or affect the rights of parties or persons interested in certain mortgages, deeds of trust, leases and contracts, which were set forth, among which was the mortgage of February 15, 1879, and that all the rights of such persons and parties were thereby reserved to them. It is plain, therefore, that the rights of parties to this proceeding were not determined by that decree.

From the views expressed we are of opinion that the stock held by the Wabash Company in the Union Elevator Company at Council Bluffs was not covered by the mortgage executed on February 15, 1879, such stock not being in any sense an appurtenance to the property covered by the mortgage. The decree on the petition of intervention must therefore be

*Reversed, and the case remanded to the Circuit Court, with a direction to dismiss the petition, and it is so ordered.*