## MARY JACKMAN v. ST. LOUIS & HANNIBAL RAILROAD COMPANY, Appellant, and ST. LOUIS & HANNIBAL RAILWAY COMPANY.

Division Two, June 16, 1924.

1. **RAILWAY MORTGAGE:** Things Passed by Foreclosure. By the foreclosure of a mortgage on "the railways, rails, side tracks, fences, fixtures, buildings, rights-of-way, depots, tenements, appendages and appurtenances owned or hereafter to be acquired" by a railroad company, "and all the estate, right, title and interest, property, claim and demand, as well at law as in equity . . . to the same and every part or parcel thereof," things that cannot be classed as "appendages and appurtenances" of the other things granted did not pass, and the word "property" cannot be construed to include any kind of property not included in the things enumerated.

2. ——: ——: Appendages and Appurtenances: Money: U. S. Bonds. Appurtenance is an appendage, or that which belongs to something else, and as used in a railroad mortgage only such property is passed as "appurtenances" as is indispensable to the use and enjoyment of the franchises of the company, and property acquired simply because it may prove useful to the company and facilitate the discharge of its business is not included in the mortgage by the use of the words "appendages and appurtenances."

Liberty bonds, money paid by the company as a fine imposed by court and subsequently returned to it, and money on hand turned over to the purchaser on the foreclosure of the mortgage (unless used to pay accrued debts to employees, for materials, etc.), are not "appurtenances and appendages," and did not pass by the foreclosure sale.

3. ————: ————: **Property.** A railroad mortgage granting the company's railways, tracks, fixtures, depots, stations, houses, etc., "and all the estate, right, title and interest, property, claim and demand, as well at law as in equity of the said party of the first part to the same and to every part and parcel thereof" does not by the use of the word "property" pass anything not included in the things enumerated. The word is associated with "estate," "right," "title," "interest," "claim" and "demand," and these words are related to the preceding description by the words "to the same and to every part and parcel thereof," and "the same" means railways, tracks, stations, etc. The word "property" cannot be detached from its context, and does not include money or Government bonds on hand at the time of the foreclosure sale.

4. ————: **Foreclosure: Judgment Against Mortgagor: Execution Nulla Bona: Equity: Trust Fund.** Where plaintiff recovered judgment for damages against a railway company, and execution was issued and returned *nulla bona* by the sheriff of the county in which the judgment was rendered, it is not necessary that execution issue to a sheriff of another county in order to prove the defendant's insolvency, but, alleging that said defendant is insolvent, plaintiff may proceed to sue the purchaser at the foreclosure sale under the mortgage, on the theory that property passed to the purchaser which was not included in the mortgage. And where said purchaser is sued, and in its answer alleges that it acquired all the property of the mortgagor, and the evidence shows that by the foreclosure sale it obtained possession of money and other assets exceeding in value the amount of said judgment which were not included in the mortgage, plaintiff is entitled to judgment against said purchaser for the amount of her·judgment against the mortgagor.

Headnote 1:  Property, 32 Cyc. 647;  Railroads, 33 Cyc. 494, 586, Headnote 2:  Appurtenances, 4 C. J. sec. 1466;  Railroads, 33 Cyc. 494, 499 (1926 Anno).  Headnote 3;  Property, 32 Cyc. 649;  Railroads, 33 Cyc. 499 (1926 Anno).  Headnote 4:  Railroads, 33 Cyc. 598 (1926 Anno);  Creditors' Suits, 15 C. J. sec. 45.

Appeal from St. Louis County Circuit Court.—*Hon. J. W. McElhinney*, Judge.

AFFIRMED.

*Ralph & Baxter, Mahan, Mahan & Fuller* and *Hostetter & Haley* for appellant.

(1) The trial court erred in finding that the claim of the Railway Company to the $3000 fine and to the $15,000 of Liberty bonds and to the cash and other miscellaneous items mentioned in the judgment did not pass to and belong to the Railroad Company, and erred in holding that the Railroad Company, had or held any money or other property belonging to the Railway Company, and erred in rendering any judgment against the Railroad Company, and erred in rendering any judgment against the Railroad Company, in favor of the plaintiff. (2) The court erred in admitting in evidence the execution and the alleged sheriff's return thereon, and erred in determining the effect to be ascribed to the issuance of said execution and a *nulla bona* return thereon.

*Frank Howell, A. E. L. Gardner, Henry S. Caulfield* and *Creech & Penn* for respondent.

(1) The mortgage should be strictly construed, so as not to include any property not clearly within its terms. 3 Cook on Corporations (5 Ed.) sec. 856; 3 Fletcher Encyc. Corp., sec. 1182; Washington County Railroad Co. v. Canadian Mills Co., 104 Me. 527, 543; In re Adamant Plaster Co., 137 Fed. 251, 257. (a) The money, bonds and fine refund are clearly outside of 'every call and item of the mortgage description, unless, indeed, they fall within the designation "appendages and appurtenances" or "other corporate property incident or appurtenant to its operation." They are the only general phrases used in the description. (b) It is clear that "appendages," as used in the mortgage, refers to physical things or properties affixed to the railroad, and forming part of it; not mere cash in bank or United States bonds, or money remitted on a fine. State Treasurer v. Railroad Co., 28 N. J. L. 21; Bank of Commerce v. Tenn., 104 U. S. 496. The

three items in question were not "an appurtenance" of
the railroad within the meaning of the mortgage. Humph-
ries v. McKissock, 140 U. S. 304; New Orleans Pacific
Railroad Co. v. Parker, 143 U. S. 42, 55. (c) Nor do the
words "other corporate property incident or appurtenant
to its operation," comprehend the money or items in
question. The words "other corporate property" are
general words following an enumeration of specific things,
and therefore the doctrine *ejusdem generis* applies. 3
Fletcher's Encyc. Corp. sec. 1285; Morgan Bros. v. Day-
ton Coal & Iron Co., 134 Tenn. 228. (2) Considered as
representing income derived from operations subsequent
to the making of the mortgage, the three items in ques-
tion were never subject to the lien of the mortgage. The
Railway Company having remained in undisturbed pos-
session and control of the railroad property, without any
receiver having been appointed or demand made for pos-
session until January 1, 1918, the earnings were totally
unaffected by the action of the Federal court. Until then,
the whole income belonged to the Railway Company, and
was liable to the creditors of the Railway Company as if
the mortgage and foreclosure proceedings did not exist.
Jones on Mortgages, sec. 771; Gilman v. Illinois & Miss.
Tel. Co., 91 U. S. 603; Bridge Co. v. Heidlebach, 94 U. S.
800; Chicago & A. Railroad Co. v. Trust Co., 225 Fed. 940;
Man v. Ry. Co., 71 N. Y. Supp. 913; Smith v. Eastern Rail-
road, 124 Mass. 154; DeGraff v. Thompson, 24 Minn. 452.
(3) The $63,795.09 found by the lower court not to have
been a part of the property covered by the mortgage, de-
cree or deed, became a trust fund in the hands of the Rail-
road Company, and became liable to pay respondent's
judgment and costs. Johnson v. United Railways Co., 247
Mo. 326; Berri v. United Railways Co., 138 Mo. App. 557;
Johnson v. United Railways Co., 281 Mo. 90; Heman v.
Britton, 88 Mo. 549; 10 Cyc. 788; Fogg v. Blair, 139 U. S.
118, 35 L. Ed. 104; Sawyer v. Hoag, 17 Wall, 610, 21 L. Ed.
731; Upton v. Tribilock, 91 U. S. 45, 23 L. Ed. 731; Saw-
yer v. Upton, 91 U. S. 56, 23 L. Ed. 220; Hotch v. Allen,
103 U. S. 205, 25 L. Ed. 885; County v. Allen, 103 U. S.
498, 26 L. Ed. 498; Northern Pac. Ry. Co. v. Boyd, 228 U.

S. 502, 57 L. Ed. 931; San Francisco & N. P. Railroad v. Bee, 48 Cal. 398; Grenel v. Detroit Gas Co., 112 Mich. 70; Chicago, R. I. & P. Co. v. Howell, 7 Wall. 392, 19 L. Ed. 117; Central Railroad v. Paul, 35 C. C. A. 639, 93 Fed. 878; Goddard v. Fishel, 9 Col. App. 306, 48 Pac. 279; Cole v. Millerton, 13 N. Y. 164, 28 Am. St. 615; Hurd v. New York, 167 N. Y. 89. (4) The issuance of an execution and a *nulla-bona* return thereon was not necessary as prerequisite to the maintenance of this suit. Dalton v. Barron, 239 S. W. 100; Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 704; Steele v. Reid, 223 S. W. 885.

WHITE, J.—The plaintiff obtained judgment against the St. Louis & Hannibal *Railway* Company, and seeks by this suit to subject to the payment of said judgment certain property of that company alleged to be in the hands of the St. Louis & Hannibal *Railroad* Company. For convenience hereafter we shall designate the defendants as the Railway Company and the Railroad Company.

In 1913 the plaintiff sued in the Circuit Court of Lincoln County for damages on account of personal injuries received while a passenger on the Railway Company. Two successive judgments obtained by plaintiff in that cause of action were reversed on appeal by the St. Louis Court of Appeals. She recovered a third judgment in September, 1919, in the sum of $12,000 and costs, which amounted to $1652.70. That judgment was affirmed by this court May 26, 1921.

The Railway Company, at the time the plaintiff's cause of action accrued and until December, 1917, owned and operated a line of railway from Hannibal, Missouri, to Gilmore, and also a branch line from Ralls Junction to Perry, in Ralls County. In 1886 the Railway Company executed a mortgage to secure certain bonds. This mortgage conveyed property of the Railway Company described as follows:

" . . . the railway of the said parties of the first part now constructed and that may hereafter be constructed from the city of Hannibal in the State of Missouri through the counties of Marion, Ralls, Pike, Lincoln

and St. Charles to a connection with the Wabash, St. Louis and Pacific Railway at Gilmore Springs in the County of St. Charles, a distance of eighty-one and three-quarters miles or thereabouts. Together with all and singular the railroad, railways, rails, turn outs and side track bridges, fences, fixtures, buildings, lands for tracks, depots, tenements, *appendages and appurtenances owned or hereafter to be acquired by the said parties of the first part;* also all railway depots or stations with the buildings and fixtures thereon erected or to be erected together with the shops, machinery and tools, rolling stock and *other corporate property incident or appurtenant to its operation,* and all the chartered rights, franchises and privileges of said parties of the first part *and all the estate, right, title and interest, property claim and demand as well at law as in equity of the said parties of the first part to the same and every part and parcel thereof."*

This mortgage was foreclosed in 1917. A second mortgage was executed by the Railway Company covering the same property, in May, 1893. The proceedings leading up to this foreclosure, the sale and approval of the same under decree, are unimportant for our purpose. In December, 1917, the Railroad Company was organized as a new corporation and, through foreclosure sale, acquired the property covered by the mortgage. The Railroad Company then took possession of the property and has since continued to operate the lines formerly belonging to the Railway Company. It is claimed by the plaintiff that certain property of the defendant Railway Company, not covered by the terms of the mortgage and available for the satisfaction of her judgment, was taken over by the Railroad Company and was in the possession of such company at the time judgment was rendered.

On appeal to the St. Louis Court of Appeals from one of the judgments which plaintiff obtained against the Railway Company, United States Liberty bonds of the par value of $15,146.47 were deposited as indemnity to a surety company on the Railway Company's appeal bond. That case being reversed the Liberty bonds were released,

and were in the hands of the Railway Company at the time of the mortgage foreclosure.

Some time prior to May, 1916, a fine of $3000 was imposed upon the Railway Company by the Federal District Court for certain irregularities in the computation of freight rates. This fine afterwards was remitted by President Wilson, and the $3000 returned to the Railroad Company after the foreclosure in 1920.

Also, $45,648.62 in cash of the Railway Company which was turned over to the Railroad Company on the foreclosure.

These three items of property, amounting in the aggregate to $63,795.09, were alleged by the plaintiff, and held by the trial court to be the property of the judgment defendant Railway Company. It was adjudged that the plaintiff, Mary Jackman, on account of the said property in the hands of the Railroad Company, recover the amount of the judgment, with interest from its date until the same, and costs, should be paid. The Railroad Company appealed from that judgment.

I. The appellant in its brief sets out certain provisions in the decree of foreclosure which, it is claimed, describes all the property of the Railway Company including the money and Liberty bonds mentioned in the plaintiff's petition. But it is not seriously contended, and was not contended in the oral argument of the case, that any property passed to the Railroad Company which was not described in the mortgage made by the Railway Company in 1886. Nor is it seriously disputed that any property of the Railway Company not covered by the mortgage which fell into the hands of the Railroad Company is subject to the payment of the plaintiff's judgment in this proceeding. [Johnson v. United Rys. Co., 281 Mo. 90, and Johnson v. United Rys. Co., 247 Mo. 326.]

II. It remains to determine whether the property which the plaintiff seeks to have applied to the payment of her judgment was covered by the mortgage of 1886. The entire description is set out above. After describing

the lines of railway, side track, fences, buildings, fixtures, etc., the words: "appendages and appurtenances" are added. It is all made to apply to all such things "owned and to be acquired by the said parties of the first part."

Then follow the descriptions of railway depots, stations, buildings, fixtures erected or to be erected thereon, with the shops, machinery, tools and rolling stock, "and other corporate property incident or appurtenant to its operation."

This requires a construction of the expressions, "appendages and appurtenances," and property "appurtenant to its operation." "Appurtenance" is defined as an appendage; "that which belongs to something else." [4 C. J. 1466.] The United States Supreme Court in Humphreys v. McKissock, 140 U. S. 304, 1. c. 314, used this language: "Under the term 'appurtenances,' as used in the mortgage in question, only such property passes as is indispensable to the use and enjoyment of the franchises of the company. It does not include property acquired simply because it may prove useful to the company and facilitate the discharge of its business. A distinction is made in such case between what is indispensable to the operation of a railway and what would be only convenient. [Bank v. Tennessee, 104 U. S. 493-496.]"

The Liberty bonds were treated by the Railway Company as independent of the mortgage, as liable for the payment of the plaintiff's claim, because they were put up to indemnify a surety of its appeal bond. They certainly are not appurtenances or appendages, nor incident to the operation of the railroad. These bonds have nothing to do with the operation of the railroad and could not be covered by those terms. The same may be said of the fine of $3000 paid by the Railway Company and released to the Railroad Company after it had acquired the lines of the Railway Company. As to the $45,000 cash which was turned over to the Railroad Company on the foreclosure of the mortgage, the trial court found that it was not described in the mortgage nor included in the foreclosure decree, nor intended to be transferred. The

court found that certain money and other things acquired by the Railroad Company *did* pass by the foreclosure decree:

Sum due from agents and conductors . . . .$   836.77;
Materials and supplies on hand of value of  9,975.05;
Traffic car, bills receivable, in amount of . .   870.61;
Miscellaneous Bills Receivable, and other
    items . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6.028.22

These items, it was held, were appurtenant to the operation of the property described in the mortgage and passed by the foreclosure decree. But the $45,000 cash, not included in those items, was properly held by the trial court to be not within the terms of the mortgage. It was not indispensable to the enjoyment of the property, nor to its operation, although it might have been convenient to use in that connection. We hold, therefore, that the three items mentioned were not covered by the mortgage under the designations "appendages," "appurtenances," or "appurtenant to its operation."

III.   The appellant, however, emphasizes the closing part of the description where, after describing the specific property, rights, franchises, etc., of the mortgagor, it concludes with this expression:

"And all the estate, right, title and interest, property, claim and demand, as well at law as in equity of the said parties of the first part to the same and to every part and parcel thereof."

Appellant spent a great deal of time in its brief in quoting definitions of "personal property." "Personal property" is not mentioned in the description, but "property" in the clause last quoted, it is argued, includes the very personal property in dispute here; property is so general a term, so inclusive in its significance, that this particular property could not escape.

This conclusion can be reached only by detaching the clause last quoted from its context. It plainly refers to the property previously mentioned and the particular interest which the mortgagor had in that property. Notice that the word "property" is associated with "estate,"

"right," "title," "interest," "claim" and "demand," and these words are related to the preceding description by the words *"to the same, and to every part and parcel thereof."* The same what? That, of course, means the things previously enumerated, railroad lines, depots, etc. "Property" is used there in the same way exactly as "interest," "right" and title" are used. It is used in the same sentence and in the same connection and with the same general significance. The appellant seems to claim that because "property" has a meaning as applied to a specific *thing,* it may be detached from this context and construed as if it were used separately.

This is a misconception of the use of the word "property." Its primary meaning as defined in Webster's Dictionary is "the exclusive right to possess, enjoy, and dispose of a thing." Cyc. gives the primary definition as "the right and interest which a man has in lands and chattels to the exclusion of others." [32 Cyc. 647-648.] The term is applied to the thing itself as a secondary meaning. That was distinctly held by this court in the case of St. Louis v. Hill, 116 Mo. l. c. 533, quoting from encyclopaedias and textbooks. A man has an interest and property in a house. He also has the house. When we speak of his property in a house we certainly do not mean the thing itself but his right to it. The primary meaning of the word property was intended in this description in the mortgage. There might be some room for dispute if the word were used alone, but it is used in connection with other words and used in such relation to the specific things, such as railway lease, depots, etc., so that it is not susceptible of any other meaning than in the sense of the "right" or "title" "to" the things described. Therefore, the money and bonds under consideration here are not described in the mortgage, did not pass by the decree, and are subject to the payment of the plaintiff's judgment.

IV.   The appellant makes the point that the plaintiff is not in position to sue this defendant because she has not proven that she has not an adequate remedy at law by execution and return of *nulla bona.* Execution was is-

sued, directed to the sheriff of Lincoln County. He made his return to the effect that he found nothing upon which to levy in Lincoln County. It is argued by the appellant that such a return cannot be proof of insolvency, because an execution may issue to any sheriff in the State.

It is not necessary to consider that point. The petition of the plaintiff alleged that the Railway Company was insolvent, and execution against it would have been unavailing if that is true. The law does not require the plaintiff to perform a perfectly useless act. She could sue, as here, by proof that an execution would be unavailing. [Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685.]

The decree of foreclosure under which the appellant bought the property of the Railway Company recites that the bonded indebtedness of the Railway Company was $1,122,435.54, and judgment for that amount was rendered. That decree recited that "the Railway Company has no resources with which to provide for the payment of said indebtedness and is *wholly and completely* insolvent."

The property under the decree was sold and purchased for $30,000, and the Railroad Company became the owner of it, leaving more than a million dollars of the judgment against the Railway Company unsatisfied. In this suit the appellant asserts that it acquired *all* the property of the Railway Company, including the sixty-three thousand odd dollars, which plaintiff seeks to subject to the payment of her judgment. The judgment in this case recites a finding by the trial court to the effect that by the foreclosure sale the Railroad Company took over all the property and assets of the Railway Company, "and thereby the said St. Louis & Hannibal Railway Company was totally divested of all its assets and property and rendered wholly insolvent and execution proof, and plaintiff was thereby precluded from enforcing the payment of her aforesaid judgment by proceedings at law."

There was ample evidence to support that finding. The trial court had before it the findings in that fore-

closure proceeding in the Federal court, and there was no attempt here to dispute the correctness of that finding. It had the unsatisfied judgment for over one million dollars. It had the situation of the defendant's property, and the *claim* that *all* the property of the Railway Company passed to the Railroad Company.

Finding no error in the record, the judgment is affirmed. All concur.