WILSON et al. v. WILLIAMS HARDWARE CO. et al.

In re MINER–EDGAR CO.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2802.

S. H. Ballard, of Charleston, W. Va. (Hall, Ballard & Hall, of Charleston, W. Va., on the brief), for appellants.

Joe L. Silverstein and Staige Davis, both of Charleston, W. Va. (Davis, Painter & Silverstein, of Charleston, W. Va., and Charles C. Scott, of Clarksburg, W. Va., on the brief), for appellees.

Before PARKER, Circuit Judge, and McDOWELL and SOPER, District Judges.

PARKER, Circuit Judge. This is an appeal from an order entered in a controversy arising in bankruptcy wherein the ancillary receivers of the Miner-Edgar Company, the bankrupt, were ordered to turn over a stock of merchandise to the Sutton Chemical Company, or to certain of its creditors who had perfected liens thereon. The only question in the case is one of fact and relates to the ownership of the merchandise. If it was in truth the property of the Miner-Edgar Company, the receivers would be entitled to it, even though that corporation may have been doing business in the name of the Sutton Chemical Company. If, however, it was the property of the Sutton Chemical Company, the order directing that it be turned back to that corporation or its creditors was correct. The learned District Judge, after hearing evidence on this question, resolved it against the receivers, and we will not disturb his finding, unless satisfied that it was clearly wrong. After a thorough examination of the record, we are not so satisfied, but, on the contrary, think that he was right.

The Sutton Chemical Company was organized in 1917 under the laws of West Virginia, and owned and operated a chemical manufacturing plant in the town of Sutton in that state. The Miner-Edgar Company was a corporation of New Jersey, having its principal place of business in New York,

and owning property in various parts of the United States. In the year 1921, it bought the business and property of the Sutton Chemical Company, taking from the latter a deed for its real estate, which was duly placed on record. This sale, of course, did not have the effect of terminating the corporate existence of the Sutton Chemical Company, or of transferring its corporate franchise to the purchaser. 14a Corpus Juris, pp. 540, 541. There is no evidence whatever that it was dissolved, but, on the contrary, there is conclusive evidence that it was kept alive as a going concern. All business at the plant at Sutton continued to be transacted in its name, bank deposits were kept in its name, notes were executed to the bank in its name, signed by individuals as officers, who were also officers of the Miner-Edgar Company, and its charter was kept alive and the corporate franchise tax was regularly paid thereon. The only inference fairly deducible from the record before us is that the real estate at Sutton was held in the name of the Miner-Edgar Company, and that the Sutton Chemical Company was kept alive as an operating company. Certain it is that all business transacted at Sutton was transacted by it, and the Miner-Edgar Company did not think it necessary to domesticate in West Virginia, as is required by the laws of that state of corporations doing business therein.

It appears that in 1924 a store or commissary was opened up at Sutton and conducted in the name of the Sutton Chemical Company, and it is the stock of goods contained in this store which is the subject of dispute in this cause. The store manager, Herold, testified that the Miner-Edgar Company "advanced" the money to buy this stock of goods; but whether the money so advanced was charged to the Sutton Chemical Company, or how it was carried on the books of the Miner-Edgar Company, does not appear. At all events it was deposited to the credit of the Sutton Chemical Company, as were all other moneys sent to Sutton for the carrying on of the business. The goods were ordered for the commissary by the Sutton Chemical Company, were sold to that company by the merchants from whom ordered, and were paid for by checks signed in its name, drawn on funds deposited to its credit in the bank. The conclusion seems fairly obvious that the goods so purchased belonged to the Sutton Chemical Company. The fact that the Miner-Edgar Company "advanced" the money with which to purchase them is not conclusive. Nothing else appearing, such advancement would result in

a debt from one corporation to the other, not in vesting the ownership of the goods purchased therewith in the corporation making the advancement. There is evidence that the goods were taxed in the name of the Miner-Edgar Company, but this, under the circumstances of the case, is only slight evidence of ownership, and certainly is not sufficient to overcome the inference to be drawn from the other circumstances to which we have referred.

The contention that the Miner-Edgar Company was merely doing business in the name of the Sutton Chemical Company is not supported by the evidence. If such were the case, it could have been shown by the officials of the companies, none of whom were examined. The books of the corporations also would have thrown great light upon the relationship existing between them. These were presumably in possession of the trustee in bankruptcy, and as they were not introduced the legitimate inference is that they would not have supported the contention of the receivers. Mammoth Oil Co. v. U. S., 275 U. S. 13, 51, 48 S. Ct. 1, 72 L. Ed. 137; Henderson v. Richardson Co. (C. C. A.) 25 F.(2d) 225, 228. And there is another reason why, in the absence of evidence to the contrary, we should not assume that the Miner-Edgar Company was the real owner of the business and merely using the name of the Sutton Chemical Company. If this were the case, the failure of the Miner-Edgar Company to domesticate and its use of the name of a supposed domestic corporation would constitute not only a fraud in the evasion of license taxes (Barnes' West Virginia Code, c. 32, §§ 126, 130), but also an evasion of the law with regard to doing business within the state denounced by the statute as a crime (Barnes' Code, c. 54, § 30). As fraud is not presumed, we should not indulge the presumption, in the absence of evidence, that the bankrupt corporation was engaged in what would amount to a fraud on the laws of the state.

It does not appear how the corporate stock of the Sutton Chemical Company was held after the sale of its property to the Miner-Edgar Company. If it was transferred to that company, or for its use and benefit, the trustee in bankruptcy can reach it and have it applied as an asset of the bankrupt estate. But there is a difference between owning the stock in a corporation and owning its assets. The latter do not pass to the trustee in bankruptcy of a stockholder, even if he be the sole stockholder; for, even though an individual acquire all of the stock

of a corporation, he and the corporation are not one and the same, but are distinct and separate legal entities, and must be so treated. 1 Fletcher's Cyclopedia of Corporations, p. 47; Humphreys v. McKissock, 140 U. S. 304, 11 S. Ct. 779, 35 L. Ed. 473; Conley v. Mathieson Alkali Works, 190 U. S. 406, 409, 23 S. Ct. 728, 47 L. Ed. 1113; Peterson v. C., R. I. & P. R. Co., 205 U. S. 364, 391, 27 S. Ct. 513, 51 L. Ed. 841; Old Dominion Copper Mining & S. Co. v. Bigelow, 203 Mass. 159, 89 N. E. 193, 40 L. R. A. (N. S.) 314, 334.

In Humphreys v. McKissock, supra, the court dealt with the property of an elevator company the stock of which was owned by a number of railroads, and the question arose whether a mortgage of its property by one of the railroads conveyed any interest in the property of the elevator company. In holding that it did not, Mr. Justice Field, speaking for the court, said:

"The commissioner in his report committed a manifest error in holding that the Wabash Company possessed any interest in the property of the Elevator Company. The facts found by him as to the organization of the latter, the subscription to its stock, the construction of the elevator and its lease to others, show beyond controversy the independent existence of that corporation, and that the railway company had no specific interest in its elevator or other property which it could mortgage. It was a mere stockholder in the Elevator Company. * * * Both the commissioner, and the court, in confirming his report and entering the decree mentioned, seem to have confounded the ownership of stock in a corporation with ownership of its property. But nothing is more distinct than the two rights; the ownership of one confers no ownership of the other. The property of a corporation is not subject to the control of individual members, whether acting separately or jointly. They can neither encumber nor transfer that property, nor authorize others to do so. The corporation—the artificial being created—holds the property, and alone can mortgage or transfer it; and the corporation acts only through its officers, subject to the conditions prescribed by law."

The receivers contend that they are entitled to the stock of goods in question under section 70a(5), of the Bankruptcy Act (11 USCA § 110), which provides that the trustee shall be vested with the title of the bankrupt to all "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." But, as this property belonged to the Sutton Chemical Company, the bankrupt had no title thereto; it could not have transferred same prior to the filing of the petition, and same could not have been levied upon or sold under judicial process against it. If it owned the shares of stock in the Sutton Chemical Company, these might have been transferred or levied upon, but not that corporation's stock of goods.

There was no error, and the order of the District Court is affirmed.

Affirmed.