FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN JAMES MCFARLAND,
            *Plaintiff-Appellant,*

v.

DIRK KEMPTHORNE, in his capacity
as Secretary of the Department of
the Interior; SUZANNE LEWIS, in her
capacity as Superintendent of
Glacier National Park; UNITED
STATES OF AMERICA; NATIONAL
PARK SERVICE,
            *Defendants-Appellees,*

NATIONAL PARKS CONSERVATION
ASSOCIATION,
            *Defendant-intervenor-*
                *Appellee.*

No. 06-36106

D.C. No.
CV-00-00020-M-
DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Chief District Judge, Presiding

Argued and Submitted
May 7, 2008—Seattle, Washington

Filed October 2, 2008

Before: Arthur L. Alarcón, Susan P. Graber, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson

14039

**COUNSEL**

Ronald W. Opsahl (briefed and argued), William P. Pendley (briefed), Mountain States Legal Foundation, Lakewood, Colorado, for the plaintiff-appellant.

William B. Lazarus (briefed), Elizabeth A. Peterson (briefed and argued), United States Department of Justice, Washington, D.C., for the defendants-appellees.

William J. Friedman (briefed), Charles H.P. Vance (briefed and argued), Covington & Burling LLP, Washington, D.C.; Jack R. Tuholske (briefed), Missoula, Montana, for the defendant-intervenor-appellee.

**OPINION**

RAWLINSON, Circuit Judge:

Appellant John J. McFarland (McFarland) contends that the district court erred in granting the defendants' motion for summary judgment. He asserts that he is entitled to an easement over Glacier Route 7 to access his property that is surrounded by Glacier National Park. Because McFarland cannot claim a common-law easement over federal land and because the National Park Service's (Park Service) denial of his permit request was neither arbitrary nor capricious, and was in accordance with governing law, we affirm the decision of the district court.

## I.  FACTS AND PROCEDURAL HISTORY

McFarland owns a 2.75 acre plot of land (the Property) located within the boundaries of Glacier National Park, in an area commonly known as "Big Prairie." The Property was conveyed to McFarland's predecessor in interest, Charles Schoenberger, in 1916 by a federal patent under the Homestead Act of 1862. The patent read: "TO HAVE AND TO HOLD the said tract of Land, with the appurtenances thereof, unto the said claimant and to the heirs and assigns of the said claimant, forever."

Glacier Route 7 passes through what is now Glacier National Park. It is, and always has been, the only road over which McFarland and his predecessors have had motorized access to the Property. Although the Park Service has prohibited snowmobiling in Glacier National Park since 1975 and has generally closed Glacier Route 7 to automobiles during the winter season, the Park Service continued to allow inholders some degree of motorized access over Glacier Route 7 in winter months until 1999.[1] In December, 1999, the Park Service notified McFarland that it would no longer allow inholders motorized access to Glacier Route 7 once it was closed to the general public. The Park Service stated that it was implementing this policy to protect wildlife and public recreational opportunities.

### A.  Administrative Proceedings

In response to the Park Service's announcement that it would close Glacier Route 7 to inholders, McFarland filed an application for a special use permit. He requested year-round permission for his family and guests to drive a vehicle on Glacier Route 7 between the Property and the Polebridge Ranger

---

[1]As the district court noted in its Order granting the Defendant's Motion for Summary Judgment, the parties dispute the extent of motorized access permitted to inholders during the winter season prior to 1999.

Station. Additionally, McFarland requested permission to use a snowmobile when "road conditions make it unsafe or unpractical to drive . . ." The Park Service denied the permit request. McFarland's administrative appeal was also denied.

The Park Service explained its denial of McFarland's permit application by reference to previous correspondence, in which it explained that its policy decision to close Glacier Route 7 to motorized traffic during the winter was "made to protect wildlife concerns and public recreation values." The Park Service also referred to its 1975 determination, following "an Environmental Assessment that included extensive public review," that snowmobiles are "an incompatible public use." The 1975 determination was reaffirmed by the park's 1999 General Management Plan.

In the context of denying McFarland's permit application the Park Service reasserted the authority of the Superintendent to enact public closures "based upon a determination that: such action is necessary for the maintenance of public health and safety, protection of environmental or scenic values, protection of natural or cultural resources, aid to scientific research, implementation of management responsibilities, equitable allocation and use of facilities, or the avoidance of conflict among visitor use activities."

Mike Snyder, the Deputy Regional Director, affirmed that denial of McFarland's permit request was consistent with the Park Service's determination that use of snowmobiles would create visitor use conflicts and disturb wildlife habitats.

### B. Federal Court Proceedings

McFarland filed suit in the United States District Court for the District of Montana, seeking to quiet title to an easement over Glacier Route 7. McFarland claimed an easement by necessity, an easement implied from the Homestead Act, and an express easement under the terms of the Schoenberger land

patent. McFarland also alleged that the denial of his application for a special use permit violated the Administrative Procedure Act, 5 U.S.C. § 706(2). The district court originally dismissed McFarland's claims, concluding that they were barred by the Quiet Title Act's twelve-year statute of limitations. We reversed and remanded the case to the district court. *See McFarland v. Norton*, 425 F.3d 724, 729 (9th Cir. 2005). On remand, the district court granted summary judgment in favor of the defendants. McFarland filed a timely appeal.

## II.   DISCUSSION

"This court reviews the district court's grant of summary judgment de novo." *Fitzgerald Living Trust (Fitzgerald II) v. United States*, 460 F.3d 1259, 1263 (9th Cir. 2006) (citations omitted). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citation omitted).

Under the Administrative Procedure Act, an agency decision will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A federal court may not substitute its judgment for that of the agency. *See United States Postal Serv. v. Gregory*, 534 U.S. 1, 7 (2001). An agency decision may be reversed only if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) (citation and internal quotation marks omitted). We must, however, ensure that the agency has "articulated a rational connection between the facts found and the choice made."

*Sierra Club v. EPA*, 346 F.3d 955, 961(citation and alteration omitted), *as amended by* 352 F.3d 1186 (9th Cir. 2003).

McFarland contends that he is entitled to an easement over Glacier Route 7 to access his property. McFarland lays claim to an easement by necessity, an easement implied from the Homestead Act, and an easement expressed in the federal land patent to his predecessor-in-interest. Additionally, McFarland posits that the Park Service's denial of his special use permit was arbitrary, capricious, and otherwise not in accordance with the law.

We conclude that the district court properly granted the defendants' motion for summary judgment. McFarland has no valid claim to an easement. To the extent he has a right to access his property across federal land, that right is subject to the reasonable regulation of the Park Service, implemented through the permitting process. The Park Service's denial of McFarland's special use permit was not arbitrary, capricious, or in violation of the law.

## A.   Easement Claims

Federal law governs a claim of easement over lands owned by the United States. *See Superior Oil Co. v. United States*, 353 F.2d 34, 37 n.4 (9th Cir. 1965). McFarland acknowledges that federal law governs the claimed easement in this case, but asserts that state law is "instructive" on points not addressed by federal law. However, the "instructive" value of state law is limited by federal interests. *See United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 309-10 (1947). Considering the parameters articulated in *Standard Oil*, the strong federal interest in the management of federal land weighs against the importation of state law to resolve the present case. *See Fitzgerald (Fitzgerald I) v. United States*, 932 F. Supp. 1195, 1201 (D. Ariz. 1996) (noting that the Federal Land Policy and Management Act (FLPMA) consolidated authority to grant rights-of-way over federal land by "repeal[ing] over thirty

statutes granting rights-of-way across federal lands and vest[-ing] in the Secretaries of Agriculture and the Interior [the] authority to grant, issue, or renew rights of way over . . . public lands . . .") (citation, alteration and internal quotation marks omitted).

## 1.   Easement by Necessity

**[1]** The doctrine of easement by necessity applies, generally, against the United States. *Mont. Wilderness Ass'n v. United States Forest Serv.*, 496 F. Supp. 880, 885 (D. Mont. 1980); *see also United States v. Dunn*, 478 F.2d 443, 444 & n.2 (9th Cir. 1973). "An easement by necessity is created when: (1) the title to two parcels of land was held by a single owner; (2) the unity of title was severed by a conveyance of one of the parcels; and (3) at the time of severance, the easement was necessary for the owner of the severed parcel to use his property." *Fitzgerald II*, 460 F.3d at 1266 (citations omitted).

**[2]** However, an easement by necessity does not exist if the claimant has another mode of access to his property. *See id.*; *see also Mackie v. United States*, 194 F. Supp. 306, 308 (D. Minn. 1961). In fact, necessity may be defeated by alternative routes or modes of access—no matter how inconvenient. *See Mackie*, 194 F. Supp. at 308 (finding no necessity where plaintiff could drive within one-third mile of a lake, carry his supplies to the lake, load a boat and cross the lake to his property). McFarland has year-round access to his property over Glacier Route 7. In the winter, this access is limited to non-motorized means. We conclude that even subject to the seasonal limitations imposed by the Park Service, and in spite of the associated inconvenience, McFarland enjoys sufficient access to his property to defeat a finding of easement by necessity.

## 2.   Express Easement Claim

**[3]** McFarland contends that he is the holder of an express easement arising from the language of the Schoenberger

Patent, which conveys the property "with the appurtenances thereof." We rejected a similar argument in *Fitzgerald II*, where a property owner also claimed an express easement over federal land based on the term "appurtenances" in the land patent. 460 F.3d at 1267. "While the word 'appurtenance' will carry with it an existing easement, it will not create the easement." *Id.* (citations omitted); *see also United States v. Jenks*, 129 F.3d 1348, 1355 (10th Cir. 1997). Thus, unless an easement existed at the time of the grant, McFarland holds no easement. *See Jenks*, 129 F.3d at 1355. As discussed above, McFarland could not claim an easement at the time of the grant, and his argument is undermined by his own representation that his "predecessor's . . . access into his property . . . was not protected by any county road easement or other guarantee of continued access."

McFarland cites *Hunter v. United States*, 388 F.2d 148, 153-54 (9th Cir. 1967), and *Humphreys v. McKissock*, 140 U.S. 304, 314 (1891), to support his claim of an express easement. Both cases are distinguishable. *Hunter* involved a question of what rights were appurtenant to an appropriated water right on federal land. 388 F.2d at 153-54. The court held that a grazing right was not appurtenant to the water rights because it was not necessary to the utilization of the water rights. *Id.* at 154. Similarly, *Humphreys* addressed whether an elevator was appurtenant to a railroad. 140 U.S. at 314-15. The discussion of the meaning of "appurtenant" in these cases in no way bolsters McFarland's argument or blunts the holding of *Fitzgerald II* that an express easement must be expressly conveyed.

### 3.   Implied Easement

**[4]** McFarland contends that he is the holder of an easement implied from existing use, created at the time of the land patent under the Homestead Act by virtue of seven years of "use so long and manifest as to show that it was meant to be permanent." McFarland attempts to bolster this argument by

pointing to the Homestead Act's language recognizing a right "to enter" public lands to establish a homestead. However, *Fitzgerald II* makes clear that this language does not create an implied easement. *See* 460 F.3d at 1265 ("[T]he Homestead Act did not grant settlers a vested property right of access over public lands to their homesteads, but instead merely sanctioned the longstanding customary use of public lands by a settler."). Moreover, application of the common-law doctrine of easement implied by prior use is not appropriate in this case, where title was taken by way of a public grant. "In a public grant nothing passes by implication, and unless the grant is explicit with regard to the property conveyed, a construction will be adopted which favors the sovereign . . ." *Albrecht v. United States*, 831 F.2d 196, 198 (10th Cir. 1987) (citation omitted). Although the government has historically provided for access across federal land to reach privately owned inholdings, that access was granted in the form of a license. *See Jenks*, 129 F.3d at 1353-55.

## B. Regulation of Access

**[5]** The Property Clause gives Congress plenary power to regulate the use of federal land. U.S. Const. art. IV, § 3, cl. 2; *see United States v. Gardner*, 107 F.3d 1314, 1318 (9th Cir. 1997) (recognizing that "the power over the public land thus entrusted to Congress [under the Property Clause] is without limitations") (citations and alteration omitted). The Park Service's authority to regulate use of federal land within the Park is rooted in the Constitution and the National Park Service Organic Act (Organic Act), 16 U.S.C. § 1. *See Bicycle Trails Council of Marin County v. Babbitt*, 82 F.3d 1445, 1454 (9th Cir. 1996), *as amended*. The Secretary's authority "applies with equal force to regulating an established right of way within the park." *United States v. Vogler*, 859 F.2d 638, 642 (9th Cir. 1988) (citation omitted). Even where a statutory right of access exists, the Park Service has broad discretion to regulate its use. *See Hale v. Norton*, 476 F.3d 694, 699-700 (9th Cir. 2007), *cert. den. sub nom. Hale v. Kempthorne*, 128

S. Ct. 804 (2007). The proper mechanism for such regulation is the permitting process. *See Adams v. United States*, 255 F.3d 787, 795 (9th Cir. 2001).

## C.    Special Use Permit

McFarland contends that the denial of his special use permit was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law. McFarland expressly asserts that the Park Service "failed to articulate a satisfactory explanation for its decision."

**[6]** McFarland's reliance on *Motor Vehicle Mfrs. Ass'n (Motor Vehicle) v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and *Ry. Labor Executives' Ass'n v. Interstate Commerce Comm'n*, 784 F.2d 959, 964 (9th Cir. 1986), is misplaced. An agency must "articulate a satisfactory explanation for its action . . ." *Motor Vehicle*, 463 U.S. at 43 (citation omitted). However, the critical factor in *Motor Vehicle* was that the agency "submitted no reasons at all" for its decision. *Id.* at 50.

Similarly, in *Ry. Labor Executives' Ass'n*, we declined to enforce an agency order due to its "total failure to articulate any reason for refusing to impose labor protections[,]" making it "impossible for us as a reviewing court to understand why the [agency] chose to deny rather than impose protections . . ." 784 F.2d at 975.

**[7]** McFarland contends that the Park Service did not consider facts unique to his situation. However, a court "will . . . uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Motor Vehicle*, 463 U.S. at 43 (citations and internal quotation marks omitted). The National Park Service's written decision and other correspondence clearly explained its reasons for closing the road and declining to make an exception for McFarland. The agency's path to its decision is easily followed by reading the correspon-

dence between the Park Service and McFarland. Ultimately, the Park Service determined that its concerns for wildlife and recreation in the national park justified closing Glacier Route 7 to motorized vehicles during the winter season.

**[8]** "If an agency's determination is supportable on any rational basis, we must uphold it." *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004) (citation omitted). "This is especially true when an agency is acting within its own sphere of expertise." *Id.* (citation omitted). As in *Voyageurs National Park Ass'n*, the Park Service acted within the sphere of its expertise when it decided not to grant McFarland's request. *Cf. id.* at 763-64 (deferring to the Park Service in an analogous circumstance). Therefore, we conclude that the Park Service did not act arbitrarily, capriciously, or in violation of law when it denied McFarland's permit request.

## III.   CONCLUSION

McFarland is not entitled to an easement by necessity. Nor was an easement expressly granted in the original land patent or implied through language of the Homestead Act or through McFarland's use of Glacier Route 7. Finally, the Park Service provided adequate explanation of the denial of McFarland's permit request to allow us to determine that it did not act arbitrarily, capriciously, or in violation of law. Accordingly, we affirm the district court's entry of judgment in favor of the government defendants.

**AFFIRMED.**