**SCHEIDE et ux v. PORSTMANN et ux.**

No. 2498.

District Court, D. Maryland.

May 10, 1945.

Wylie L. Ritchey and G. Dudley Iverson, both of Baltimore, Md., for plaintiff.

Francis T. Peach and John L. Askew, both of Towson, Md., for defendant.

CHESNUT, District Judge.

In this case the plaintiffs as tenants are suing the defendants, as landlords, for treble damages for an alleged overcharge for rent. The suit is based on the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq. The authority given for the particular suit is to be found in section 925(e).

On October 23, 1942, the landlords, by a written instrument, leased to the tenants "four and one-half acres, improved with an eight-room cottage known as Horn Road, Perry Hall, Md.", for the period of one year beginning on the first day of November 1942, and ending on the 31st day of October, 1943, at $35. a month rent, the premises not to be used for purposes other than those of a farm and dwelling, the agreement to continue in force from term to term after the expiration of the term provided and that the parties or either of them can terminate the same at the end of the term above mentioned or any part thereof by giving at least thirty days notice thereof in writing. The tenancy has continued until the present time; but on March 8, 1945, the tenants filed this suit for the recovery of overcharges. They specified the overcharge to have been at the rate of $10. a month for the preceding twelve months, and they claim treble this amount plus reasonable attorney's fees and costs as determined by the court. The plaintiffs' case is based on the contention that under the Emergency Price Control Act, and the Regulations thereunder, the maximum rent charge for the leased property was $25. a month. The defense to the suit is based on the contention that while the house on the property was rented on April 1, 1941 (the critical date for the freezing of rents in this case) at the rate of $25. a month, the adjoining land consisting of about four acres, was not included in the rental to the tenant at that time and therefore the $25. rate was not the maximum legal rate for the property now rented to the tenants.

The case has been submitted for decision by the court (without a jury) after hearing witnesses in open court and arguments of counsel. From the evidence in the case I find the following facts:

1. The property involved consists of four and one-half acres of ground improved by an eight-room dwelling with modern conveniences, situated in Baltimore County a few miles northeast of the Baltimore City limits and near the Belair Road. The house faces on a side road known as Horn Road and is known as No. 1 Horn Road. The house stands back from the road about fifty feet with a lawn in front, and one or two small out-buildings in the immediate rear. The main acreage of the land is in the rear of the house.

2. The plaintiff, Scheide, is and has been for some years past employed by the Glenn L. Martin Company in an important clerical capacity at a salary at the rate of about $3500 a year. The defendant Porstmann, is a locomotive engineer who has been in the service of the Baltimore & Ohio Railroad for many years past.

3. The defendants (landlords) bought this property in 1938 with the intention of occupying it as their home as soon as circumstances would permit. The capital cost with improvements shortly added, was about $4500 or more. At the time the property was purchased the house was occupied by the owner but the land had been rented by him to another person.

4. In March 1939 the landlords placed the house in the hands of a rental agent. He advertised the property for rent in a newspaper describing it as follows: "$25. Mo. Belair Road near Overlea, 7 rooms modern cottage 4½ acres. Ham. 5514." Mr. and Mrs. Porstmann, the owners, say that this advertisement was never called to their attention and they did not know that the agents had advertised the land with the house for rental. The agent, who is now deceased, obtained tenants at the rental of $25. a month. They were a Mr. and Mrs. Haeckel. Mr. Haeckel is now in the military service and did not testify as a witness. Mrs. Haeckel testified that there was no written lease for the property, but Mr. and Mrs. Porstmann testified that there was a written lease which merely described the property rented as No. 1 Horn Road, without any reference to the land. There was also to some extent corroboration of their testimony with respect to the existence of a written lease by

their daughter. Mrs. Haeckel testified that the agent told her she could use the land but in fact she made no use of any of it other than the front yard, a small chicken house in the immediate rear, and a small lot nearby as a Victory garden. These tenants occupied the property until about October 1942. During their tenancy the land was not in fact used by any one. The agents for the landlord collected the monthly rent. The monthly receipts therefor were offered in evidence. Many of them recite the payment of rent for the "house". None of them makes any mention of the land as included.

5. In accordance with section 7 of the O.P.A. Rent Regulations for "housing", with amendments to March 29, 1945, (1388.-1181—Document No. 44936), the landlord filed a registration statement for the house. This statement described the house as No. 1 Horn Road, consisting of a single unit with eight rooms with two units therein. The rent on April 1, 1942 was $25. a month. The equipment and services were specified in detail on the printed form. No mention was made of the land. Under the item on the form reading "List any other services", the specification was "None". A copy of this registration statement was presumably mailed to the tenants by the Administrator as required by section 7 of the Regulations above referred to. There is no evidence that the tenants at any time took exception to the description of the property rented.

6. During the tenancy of the Haeckels the landlords learned that the tenants had sublet a portion of the house, as they contended without permission, and for this and other assigned reasons, Mr. Portsmann filed a petition with the O.P.A. Administrator asking an increase in the rental. No mention was made in this statement of the land as a part of the premises rented. Permission to increase the rent was denied by the Administrator without assigning reasons therefor.

7. After Mr. and Mrs. Haeckel vacated the property in 1942 the landlords executed a lease to the plaintiffs as tenants, describing the property as four and one-half acres improved with an eight-room cottage known as No. 1 Horn Road, Perry Hall, Md., for $35. a month. Before making this new lease Mr. Portsmann consulted a reputable attorney of Baltimore County informing him that previously the house without the land had been rented at $25. a month, and asking his advice whether the new lease to Scheide at $35. a month was proper. The attorney advised him that it would be. Section 7 of the Regulations above referred to provides that upon renting to a new tenant the landlord shall file a notice with the O.P.A. Office on the form provided therefor, and containing the new tenant's statement that the Regulation has been exhibited to him and that the rent for such accommodations is in conformity therewith. Mr. Porstmann did not comply with this Regulation if it is applicable in the particular case.

8. On February 13, 1945 the landlords gave written notice to the tenants of termination of the lease on March 31, 1945, and apparently sent a copy of this notice to the O.P.A. Office. See Regulations s. 6(a). The tenants at first refused to vacate the property in accordance with the notice, contending that the lease could not be terminated prior to the expiration of the current year, and it appears litigation thereon is now pending in Baltimore County. But at the trial here Mr. Scheide testified that he had now secured other property and expected to vacate the premises shortly. In the meantime, however, it appears that the tenants had obtained a copy of the original registration statement for the house with rental at $25. a month and had questioned or were proposing to question the amount of the rental.

9. The Emergency Price Control Act, 50 U.S.C.A. Appendix, § 942(f), defines housing accommodations as follows:

"The term 'housing accommodations' means any building, structure, or part thereof, *or land appurtenant thereto,* or any other real or personal property rented or offered for rent for living or dwelling purposes * * * together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property."

The Regulations [s. 13(6)] contain a similar definition for housing accommodations.

An important question in the case is whether the four acres of land included in the lease to the Scheides was land "appurtenant" to the house within the meaning of this definition and under the facts of the case. The principal issue of fact is whether the lease to the first tenant at $25. a month included the four acres of ground in the rear of the house. On this issue I find from the preponderance of evidence in the case, that it did not include the land.

■ The Emergency Price Control Act and the Regulations thereunder in general with respect to maximum rentals, have recently been upheld by the Supreme Court of the United States as valid emergency war legislation. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892. And the Emergency Court of Appeals provided for in the Act has likewise so upheld them in a number of decisions. Northwood Apts., Inc., v. Brown, Adm'r, Em.App., 137 F.2d 809 (dealing with the Baltimore Defense Housing Area); Hillcrest Terrace Corp. v. Brown, Em.App., 137 F.2d 663; Taylor v. Brown, Em.App., 137 F.2d 654; Lakemore Co. v. Brown, Em.App., 137 F.2d 355; Bibb Mfg. Co. v. Bowles, Em.App., 140 F.2d 459; Madison Park Corp. v. Bowles, Em. App., 140 F.2d 316.

■ The landlords in this case contend that the lease to the plaintiffs as tenants is not properly within the scope of the Regulations which relate primarily to housing accommodations; and the latter include land only when it is "appurtenant" to a house and connected with its use and occupancy. It is conceded by counsel for the tenants that the Regulations do not apply to the lease of vacant land. The lease in question described the property leased as "four and one-half acres, improved with (a) 8-room cottage, not to be used for purposes other than those of a farm and dwelling." Section 1(b) (1) of the Regulations provides: "This Regulation does not apply to the following: Farming Tenants. Housing accommodations situated on a farm and occupied by a tenant who is engaged for a substantial portion of his time in farming operations thereon". Counsel for the plaintiffs say this exemption from the scope of the Regulations does not apply to this case because in fact the tenant was not engaged for a substantial portion of his time in farming operations. The landlord does not dispute the fact, but points to the terms of the lease which expressly contemplate that the land may be used for farming purposes. I do not recall any definite evidence in the case as to whether the landlords had actual knowledge of the tenants' activities with regard to the use of the land.

Counsel have not referred me to any Regulation which precisely applies to this situation, but I note that section 9 of the Regulations reads as follows:

"S.9. Evasion (a) General. The maximum rents and other requirements provided in this Regulation shall not be evaded, either directly or indirectly, in connection with the renting or leasing or transfer of a lease of housing accommodations by * * * modification of the services furnished with housing accommodations, or by tying agreement, or otherwise."

Although I find by the weight of the evidence that the land in this case was not rented to the former tenant of the house and was not appurtenant thereto, and was therefore not included in the $25. rent for the house, I think, considering the important purposes of the Act and the Regulations, that it would amount in effect to defeating the legislation to hold that the lease in question, including the house and the land, was not within the intended scope of the Regulations in this case. The parties could properly have apportioned the consideration in the new lease to $25. for the house and $10. for the land separately. In that case obviously the second renting of the house would have been subject to the Regulations and the lease of the land would not. But when the landlords combined both in one paper without apportionment of the rental they cannot thereby properly withdraw the house from the operation of the Regulations. There was no evidence in this case as to the fair and reasonable rental value of the land apart from the house. Perhaps it may be said that $10. a month is not intrinsically an unreasonably large rent for four acres of tillable ground located as was this land;

but as the parties have not themselves apportioned any part of the rental to the land exclusive of the house, the court cannot make a new contract for them in that respect. In reaching this view I am dealing with the particular facts of this instant case. The situation might be materially different under other facts as, for instance, where the land is the dominant feature of the lease and the house merely incidental thereto. For instance, if the owner of a fifty-acre farm rents the house thereon but not the land, to A, for $25. a month, and subsequently upon A's vacation of the house, leases the land including the house to a new tenant for farming purposes for say $75. a month, it may well be said that the latter lease is not within the scope of the Regulations. But in this particular case, while the four acres of ground were tillable and of value for rental purposes, it was obviously a minor element of value in the lease. The particular facts of the case seem to show quite clearly that the housing accommodations constituted the major element, or, in other words, constituted the predominant use.[1]

■ Counsel for the plaintiff contends that the whole of the land should be considered appurtenant to the house under the definition of housing accommodations above mentioned, especially as it is contended that the first rental of the house to the Haeckels included the land. I have not been referred to any case or administrative interpretation that further defines or applies the word "appurtenant" in this definition. In the law of real estate it would be inapt ordinarily to speak of land as appurtenant to a house because the legal conception of the word "appurtenant" in this connection implies something that is minor and only incidental to a major thing.

"This term, both in common parlance and in legal acceptation, is used to signify something appertaining to another thing. as principal, and which passes as an incident to the principal thing. Lord Coke says (Co.Litt.121b), a thing corporeal cannot properly be appurtenant ·to a thing corporeal, nor a thing incorporeal to a thing incorporeal. According to this rule, land cannot be appurtenant to land." Harris v. Elliott, 35 U.S. 25, 54, 10 Pet. 25, 54, 9 L.Ed. 333.

■ See also Humphreys v. McKissock, 140 U.S. 304, 314, 11 S.Ct. 779, 35 L.Ed. 473; 1 Bouv. Law Dict., Rawle's Third Revision, p. 224; 6 C.J.S., Appurtenance, pp. 133, 134, 136; 1 Tiffany L. & T. 816; 32 Am.Jur. 163, 164. But the word "appurtenant" in the context of this definition appears to have the more general significance of something that is actually used with something else. In this sense it is not inappropriate to consider the whole four acres of land as appurtenant to the house if it was in fact used with the house, and thus constituted a part of the housing accommodations rented for $25. a month to the first tenants. Woodfall's Law of Landlord and Tenant, 24th Ed., p. 208. On the facts, however, from the preponderance of the evidence, I have found that the land, except for a small portion thereof, say half an acre, was not in fact rented or

---

[1] The Administrator has heretofore issued some interpretations which seem to furnish fair analogies to this situation. Interpretation 1(a—1) published July 25, 1942, and issued in the Interpretation Series on May 15, 1943, deals with the applicability of the Regulations to structures in which business and dwelling uses are combined. The Regulations are not applicable to business uses but are to dwelling uses. The pertinent part of the Interpretation reads as follows: "Thus the property as a unit is free of control by the Regulation where either (1) the predominant use, on a space basis, is for business purposes, and (2) the rental value of the business portion is clearly in excess of the rental value of the dwelling portion. If neither of these tests is satisfied, the property as a unit is subject to the Regulation."

And in Interpretation 1 (a—III) issued October 2, 1942, the Administrator poses the following case: "On January 1, 1941 T rents a house and lot from L for $30. a month. On October 1, 1941, T. rents from L adjoining land for extension of his yard for $10. a month". The Interpretation reads: "The adjoining land is part of the housing accommodations and the maximum rent for the entire premises is $30. a month under section 4(a). However, L. may petition for adjustment under section 5(a—3) on the basis of a substantial increase in services."

used by the first tenants. Counsel for the plaintiffs argues to the contrary and takes the strong position that the action of the landlord in this case has been throughout merely to obtain a higher rent for the property by an attempted evasion of the Regulations. I do not reach this conclusion on the facts. It is true there is some evidence which tends to support the contention but the preponderance of the evidence is against it. The actions of the landlord are consistent with their contention that only the house and not the land was rented to the Haeckels. In their registration statement filed in 1942 the house alone is mentioned. In their subsequent application for an increase in the rent no reference is made to the land. The rent receipts to Mrs. Haeckel by the agent refer to the house and not to the land. Before the landlord executed the new lease to the present tenants he consulted reputable counsel as to his right to make the rental for the land including the house $35. a month, and informed him that the land has not previously been rented. His lawyer's advice was that he could properly make the new lease at the higher rental. In this opinion, as already indicated, I think the lawyer was mistaken but I have no doubt that the advice was given in good faith. The whole subject matter of the application of the Price Control Act and Regulations to housing accommodations is, or may be, very complex in particular situations, including this one. It requires very careful and detailed study of the Regulations to know just how they apply in some situations. It is not surprising that a lawyer in general practice would think that the lease in this case of the land and the house would be free from the Regulations. To be of a contrary opinion it is necessary to very thoroughly study the numerous detailed Regulations, and Interpretations.

■ I conclude therefore that the new lease made in this case was subject to the Regulations and it was the duty of the landlord to report it to the local office of the O.P.A. and exhibit to the new tenant the original registration statement and obtain his approval. It would also have been proper for the landlords to have petitioned the O.P.A. for an increase in rental under section 5(a—3) of the Regulations. It is possible that this administrative procedure may now still be open to the landlords if they wish to avail themselves of it. Whether, if granted, it would have any retroactive effect is not now necessary to decide.[2] In the present posture of the case it follows that the verdict must be for the plaintiffs for the amount of the overcharge of $10. a month for twelve months past. Section 925(e) of the Act provides that the damages recoverable, in addition to reasonable attorney's fees and costs as determined by the court, may be "whichever of the following sums is greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practical precautions against the occurrence of the violation."

■ I conclude that the violation in this case was neither willful nor the result of failure to take practical precautions against it. The term "willful" as used in this section has been held to mean knowingly and deliberately rather than malevolently. Zimberg v. United States, 1 Cir., 142 F.2d 132. See also United States v. Renken, D.C.S.C., 55 F.Supp. 1; and People v. Keane, 181 Misc. 592, 47 N.Y.S.2d 347.

---

[2] If the defendants elect to now petition the Administrator for relief, a motion for a new trial may be made in the present case, and then further consideration may be given to any new evidence that may develop if held to be relevant to the case. The case seems to be a hard one for the defendants, but as now submitted to the court, it is necessary to give effect to the public policy involved in the Act and the Regulations.

In United States v. Illinois Central Railroad Co., 303 U.S. 239, 242, 58 S.Ct. 533, 535, 82 L.Ed. 773, it was said:

"In statutes denouncing offenses involving turpitude, 'willfully' is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. Our opinion in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, shows that it often denotes that which is 'intentional, or knowing, or voluntary, as distinguished from accidental,' and that it is employed to characterize 'conduct marked by careless disregard whether or not one has the right so to act'."

In my opinion the defendants in this case were neither willful nor careless in making the lease in question and collecting the rental of $35. a month thereunder. On the preponderance of the evidence, I find they acted in good faith. They also took legal advice as a basis for their action and fairly stated the situation with respect to the property to their attorney. Bowles v. Farmers Nat. Bank, 6 Cir., 147 F.2d 425, 430; Bowles v. Jung, D.C.Cal., 57 F.Supp. 701, 709; Simmons v. Charbonnier, D.C.Ga., 56 F.Supp. 512. If the fact were to be found, as contended for by counsel for the plaintiffs, that the defendants throughout were acting in bad faith and in the deliberate attempt to evade and circumvent the application of the Regulations, I would have no hesitation in reaching the conclusion that they had acted willfully in the matter.

The final conclusion of law is that the verdict should be for the plaintiffs in the amount of $120. with reasonable attorney's fees and costs. I fix $50 as the reasonable fee in this case.[3]

If counsel desire to take any further action in the matter before the entry of judgment by the clerk, it should be done very promptly.

---

[3] There is a possible contention that the defense based on lack of willfulness is not available with respect to the monthly rent paid before June 30, 1944, when section 925(e), as it now reads, was amended. See section 108(c) of the Amending Act of June 30, 1944, and note in 50 U.S.C.A.Appendix, § 925. But the plaintiffs' complaint states that it is brought under section 925(e) and no contention has been advanced that it is not wholly applicable to this case. If counsel desire to be now heard further on the point, it should be very promptly brought to the attention of the court. See also Speten v. Bowles, 8 Cir., 146 F.2d 602, 605; Bowles v. Hasting, 5 Cir., 146 F.2d 94, 95; Bowles v. Farmers Nat. Bank, 6 Cir., 147 F.2d 425, 430; Bowles v. Franceschini, 1 Cir., 145 F.2d 510, 514.