8292

### WEST END DEVELOPMENT CO. v. THOMAS.

### SAME v. O'HAGAN.

1. CHARLESTON.—Finding by master and Circuit Judge that the land reserved under the act of 1768, 7 Stats. 88, for a common for Charleston did not include the "Boulevard Lots," sustained.

2. IBID.—STATUTES.—The act of 1768, 7 Stats. 88, merely declares the intention of the legislature to reserve certain marsh lands about the city of Charleston for a common and is not binding on a subsequent legislature, which in 1783, 9 Stats. 99, had the power and did grant the said lands to the city council of the city of Charleston in trust to be sold or leased.

3. IBID.—ESTOPPEL.—The city of Charleston and its "inhabitants" were not parties to the suit of O'Brien against Charleston, and Campbell against Charleston in the Court of Common Pleas for Charleston county, and are not bound by the consent decrees therein.

4. IBID.—IBID.—EASEMENTS.—Abutting landowners can acquire no easement on lands held by the city of Charleston as a common, but if they have they cannot stand by in silence while large sums have been spent in improvements and the use of the property has been greatly changed and then assert their claim.

Before FRANK B. GARY, J., Charleston, June term, 1912. Affirmed.

Two actions (1) by West End Development Co. against John P. Thomas, the Mayor of the city, and the Commissioners of Colonial Common and Ashley River Embankment; (2) same plaintiff against W. J. O'Hagan and same defendants. The defendants in both cases, John P. Thomas and W. J. O'Hagan, appeal.

*Messrs. Mitchell & Smith,* for Thomas, and *Mr. Wm. Henry Parker,* for O'Hagan.

*Messrs. James Simons* and *George H. Moffett,* for plaintiffs, cite: *The legislature has the power to annul any grant to a municipality:* 2 McC. 355; 4 Wheat. 518. *Effect of a*

*consent decree:* 2 Hill's Ch. 53; 2 Rich. Eq. 328. *The Court nor the city council could not repeal an act nor bind a succeeding council:* 4 Tex. 373. *The legislature has the right of disposal of public property held by a municipality for the public:* 3 Dill., secs. 102, 1103, 1104, 1105, 1122, 1160; 28 Cyc. 621, 624, 625; 8 Cyc. 907, 945; 6 Am. R. 70.

August 10, 1912. The opinion of the Court was delivered by

MR. JUSTICE FRASER. In 1909 the legislature of this State (acts 1909, page 341) enacted:

"Whereas, The city council of Charleston contemplates the extension and improvement of the water front of the said city by extending its sea wall from the southwest extremity of White Point Garden to a point known as 'Chisolm's Mill,' on the Ashley River, as defined upon a plat hereinafter mentioned, and the filling in of the low-lands lying between the said sea wall and the high lands of the said city, and the extension and construction of highways upon the lands so reclaimed:

"Section 1. *Be it enacted* by the General Assembly of the State of South Carolina, In consideration of the public improvements involved in the work aforesaid, the State of South Carolina has given and granted, and by this act does give and grant, unto the city council of Charleston, its successors and assigns, all the right, title, interest and estate of the State of South Carolina as the same may now be, of, in and to the land not heretofore granted under any of the grants hereinafter mentioned, lying between highwater mark and the outer line of the sea wall so to be constructed as indicated upon the plat of Simons & Mayrant Company, dated the 19th day of January, 1909, and filed in the office of the Secretary of State and also recorded in the office of the register of mesne conveyances for the county of Charleston; and also the right to dig, excavate and remove from the bed of the Ashley River such soil as may be necessary to fill

up the land lying between the said sea wall and the high-land of the present water front of the said city."

In 1783 (7 Stats., 99) the provincial legislature passed an act in which it provided as follows:

"The marsh lands appropriated by law for a common * * * shall be vested in the said city council and their successors for the use and advantage of said city, to be *leased, sold, improved on* or otherwise disposed of as to the *said city council shall appear most conducive to the welfare and advantage of said city and the inhabitants thereof.*"

In 1768 (7 Stats., 88, 89) the provincial legislature passed an act, the fifth section of which is as follows:

V. "And be it further enacted by the authority aforesaid, That all the vacant marsh land lying on each side of the said canal, hereby directed to be made, situate on the east side of Ashley River, within the limits of Charleston, shall forever hereafter be reserved and kept for the use of a common for Charleston; and any grant that may be made or obtained for the same, or any part thereof, is hereby declared to be absolutely null and void."

Under the act of 1909 the city council of Charleston conveyed to the respondent (an auxiliary corporation) which went to considerable expense in filling up lands referred to in that act and preparing the same for sale as building lots. The defendants-appellants herein agreed to purchase two of the lots, but declined to comply with their contract on the ground that under the act of 1768 this land had been granted to the use of the people of Charlestown as a common and the acts of 1783 and 1909 are invalid. The appel-lant also claims that the city is estopped from selling the lots by virtue of two judgments in which the city council was a party. The judgments, it is claimed, fix the right of common and by these judgments the city is bound.

The case was referred to the master, who held that the land described in the acts of 1768 and 1783 were not the lands covered by the act of 1909 and no part of the land

lately improved by the city council, and that even if they are the same, the act of 1783 is valid and the judgments set up as estoppels are not estoppels. The Circuit Judge confirmed the report of the master and ordered the appellants to comply with their contracts. From this decree this appeal is taken on the following grounds:

Exception 1. "In holding that the said grant of land for a common under the act of 1768 did not include the lands now known as the 'Boulevard Lots' or any part thereof; whereas he should have found that such lands as the 'Boulevard Lots' generally, and the two lots thereof here in question specifically, formed a part of the land so granted and dedicated under said act for a common."

The concurrent findings of fact by the master and the Circuit Judge are abundantly supported by the evidence and this exception is overruled.

Exception 2. "In holding that the plaintiff is not estopped from making the question of location on account of the litigation in the cases of *Campbell* v. *Charleston* and *O'Brien* v. *Charleston*.

"Whereas, (a) he should have held that the decrees in these cases were a judicial recognition of the existing validity of the act of 1783, and of the grant of lands thereunder for a common, embracing the lands here in question, and that the said city council is now estopped from questioning the validity thereof; and it is submitted his Honor should have held that the inference to be drawn from said cases is that the marsh lands south of Broad street, including the 'Boulevard Lots' generally, and the two lots here in question specifically, were in fact included in the grant of 1768 for a common—it being admitted by the agreed statement that the lots here in question and the greater part of the 'Boulevard Lots' generally, whether so included or not, were never sold or disposed of by the city council of Charleston prior to the year 1853.

"(b) And he should have held, that, whatever the force and effect of the acts of 1768 and 1783, apart from these cases, and whatever the original limits of the land granted by the act of 1768 for a common, the legal effect of the decree of Judge Kershaw, 1883, in the case of *O'Brien* v. *City Council of Charleston* was a judicial recognition and determination that the said act of 1768 was of force, not superseded by the act of 1783, embracing in its terms the 'Boulevard Lots' generally, and the two lots here in question specifically, dedicating the same for a common in perpetuity; and that the city council of Charleston is by the terms of said decree and the consent of said city countil thereto, estopped from denying the same."

The master finds "there is absolutely nothing before me to show that any portion of the lands sold to the West End Development Company by the city was within this grant."

This finding being affirmed, of course there is no ground for estoppel. Even if it were the same land there would be no estoppel. The act of 1768 granted nothing. That act contained a reservation and not a grant. The act merely declared the intention of the legislature to keep the marsh land as a common and could not bind any other legislature, even if it had not been passed before the adoption of the Constitution. The act of 1783 then gave the marsh land to the city council to be sold, etc., as to the *city council shall appear most conducive to the welfare and advantage of said city and the inhabitants thereof.* The city council were mere trustees with power to improve, sell, etc. The city and its "inhabitants" were not parties to the suit and not bound by it.

This exception is overruled.

Exceptions 3 and 4:

3. "In holding that even if the lots in dispute were embraced in the legislation of 1768, that such legislation has been superseded by subsequent legislation, especially by the

act of 1783, incorporating the city of Charleston; and that since the enactment of 1783 it has been competent for the city council of Charleston to make such disposition of vacant marsh land appropriated for a common as to the said city council might appear most conducive to the welfare and advantage of said city, and the inhabitants thereof; and more particularly:

"(a) Whereas, he should have held that said act of 1768 was not superseded, but is now of force and the dedication thereunder of lands for 'a common for Charlestown' is valid and subsisting, not only because the act of 1783 and the subsequent acts have not that effect, and even if the same had been intended to have such effect, this would have been beyond the power of the legislature to enact such legislation as it would divest vested rights.

"(b) And whereas, his Honor should have held that said act of 1783 did operate against a subsequent grant by the Assembly of 1783, and that there was then, and are now, restrictions of the right of a State legislature to sanction the change of use of a public grant, and more particularly a restriction in favor of abutting landowners, who have vested rights in the use for a common of the land upon which their lands abut.

"(c) And whereas, his Honor should have held that such grant being for a restricted portion of the public was not a grant to the public in the sense of the principle contended for.

4. "That in this, his Honor should have held that a conveyance subject to said consent decree, and not subsequent to the consent decree in O'Brien, could not, and should not be approved by the Court, and that city council, thereto consenting, could so far give to such an act legislative effect as to estop said city council forever thereafter, especially when, as in the case at bar, the consent of city council in said two cases, and the resulting dedication effected by the decree of Court in said cases under said consent, was given

for a valuable consideration to the city council of Charleston in the release of certain claims and demands expressly waived and disposed of by said consent decree; and whereas, in this case the rights of abutting landowners are shown to be in question; and whereas, his Honor should have held that the defendants have shown that the grantors have no title; that at all events there is a cloud on the said title, and that there is nothing shown in the proceedings, in the way of law or evidence, to remove the cloud; and, therefore, the defendants should not be compelled to comply."

Abutting owners could acquire no easements over land held for the public. Even if they could they would themselves be estopped. They could not stand silent while large sums were being expended in valuable improvements and the use of the property changed and then assert the rights they had lost by their silence.

What has already been said disposes of these exceptions, and they are overruled.

Exception 5. "That his Honor erred in finding that the defendants have failed to establish the special defenses alleged, and in finding as matter of law that plaintiffs are entitled to the relief prayed for; whereas, he should have found that the defendants have shown that plaintiffs have no title and that the defendants should not be compelled to perform specifically."

What has already been said disposes of this exception and it is overruled.

The judgment of this Court is that the judgment appealed from is affirmed.

MR. CHIEF JUSTICE GARY *did not sit in this case.*