16266

EHRHARDT v. CITY COUNCIL OF CHARLESTON *ET AL.*

(55 S. E. (2d) 344)

*Mr. William C. Ehrhardt, in propria persona,* of Charleston, *Plaintiff,*

*Messrs. Malcolm E. Crosland* and *Frank H. Bailey,* of Charleston, *for Defendant, The City Council of Charleston,* and *Messrs, J. C. Long* and *Arthur Rittenberg,* of Charleston, *for Defendant, Sergeant Jasper, Inc.,*

September 23, 1949.

PER CURIAM.

By permission first obtained, this action was commenced in the original jurisdiction of the Supreme Court on August 4, 1949. The purpose of the action was to have declared null and void a deed from defendant The City Council of Charleston to defendant Sergeant Jasper, Inc., conveying a certain parcel of land on the east side of .the Ashley River in Charleston and to enjoin the defendant Sergeant Jasper, Inc., from causing a 14-story apartment building to be constructed upon said land.

The matter comes before the Court on the complaint of the plaintiff and the joint answer of the defendants, together with stipulations of fact contained in the transcript. There is no dispute between the litigants as to the facts. The questions before the Court relate to the right and power of the City of Charleston to convey the lands in question for the above stated purpose.

The plaintiff is a resident of the City of Charleston and the occupant with his family and part owner of property which is about two hundred feet from the property involved in this cause. He alleges that Sergeant Jasper, Inc., is about to begin the erection upon the land in question of a fourteen story apartment building, to be used for residential and commercial purposes, at a cost in excess of two million dollars. He describes this purpose of the grantee as a "private," as

distinguished from a "public" purpose, and contends that the conditions under which the City of Charleston acquired title to the lands, and the legislative history of the title after such acquisition, deprived the City of Charleston of the power to make the conveyance, and that in other respects hereinafter noted the conveyance is *ultra vires*.

The land in question contains approximately 7.4 acres consisting chiefly of a mud flat located on the east side of the Ashley River in Charleston. It is generally covered with water during high tide except for a small portion which is exposed during normal high tides. This mud flat lies at the west end of Broad Street near the Colonial Lake, being separated from Colonial Lake by Ashley Avenue and a playground known as Moultrie Park.

In 1768 Broad Street extended westward only as far as Savage Street on the south and Franklin Street on the north. It was decided to build a canal from the then west end of Broad Street to the low water mark on the Ashley River in order to furnish a haven for boats caught in the Ashley River during boisterous weather and avoid the necessity of their going around the southern point of the peninsula called White Point (now the Battery) in order to find safe anchorage.

By Act of the Provincial Assembly of 1768, 7 South Carolina Statutes at Large, p. 87, it was therefore provided that certain named individuals were constituted commissioners and as such were authorized and empowered: "Sec. 1. * * * to cause to be cut a channel or canal from the west end of Broad Street in a direct line to low water mark on Ashley River, not exceeding twenty-five feet wide, and of a sufficient breadth at the end next to Broad Street, to receive two schooners, and of a sufficient depth to receive boasts, canoes, pettiaugers, schooners, or other vessels not drawing more than six feet water, and to cause good and substantial banks or causeys to be raised on both sides thereof, of such breadth, depth and height, and in such man-

ner and proportion, as shall, by the said commissioners, or the major part of them, be thought necessary and convenient to answer the intended purpose of this act."

The Act further provides: "Sec. 5. That all the vacant marsh land lying on each side of the said canal, hereby directed to be made, situate on the east side of Ashley River, *within the limits of Charlestown,* shall forever hereafter be reserved and kept for the use of a common for Charlestown; and any grant that may be made or obtained for the same, or any part thereof, is hereby declared to be absolutely null and void." (Emphasis added.)

At the time of the passage of this Act of 1768, the west end of Broad Street (from which point the canal was to be built) marked the western boundary of the City of Charlestown; the western boundary line of the City at that time followed generally along what is now Franklin Street to the north of Broad Street and Savage Street to the south of Broad Street. The northern boundary line was marked by Beaufain Street. The property in question in this suit was not at the time of the passage of the Act of 1768 within the limits of Charlestown. The area from the western boundary line of the then limits of Charlestown to Ashley River where the property is located consisted principally of marsh land and mud flats. The territorial limits of the city at that time are shown by the Grand Plat of Charlestown, copy of which will be found Volume 9, page 12, South Carolina Historical and Genealogical Magazine; also City Engineer's Office, Charleston, S. C. Plat Book, opposite page 1. The Grand Plat of Charlestown showing the limits of the City of Charlestown in 1768 was incorporated as a part of the Transcript of Record in this case. There was also incorporated a map showing the present city limits of Charleston with the Grand Plat of Charlestown superimposed on the same which showed the location of the property in question to be beyond the limits of Charlestown as it existed in 1768.

After the American Revolution, Charlestown was incorporated as the City of Charleston by Act of the Legislature of South Carolina in 1783, 7 South Carolina Statutes at Large, p. 97; by this Act it was provided as follows: V. "That the fee simple of the following public lands and buildings within the said city *viz*: * * * the marsh lands appropriated by law for a common; * * * any vacant low-water lots fronting any of the streets; shall be vested in the said city council and their successors, for the use and advantage of the said city, to be leased, sold, improved on, or otherwise disposed of, as to the said city council shall appear most conducive to the welfare and advantage of the said city, and the inhabitants thereof."

The territorial jurisdiction of the City of Charleston was extended to the channel of the Ashley River in 1815, 7 South Carolina Statutes at Large, p. 135, thereby bringing the lands now in question within the limits of the municipality.

In 1836 the title to all vacant land not legally vested in individuals in the harbor of Charleston, covered by water, was vested in the City of Charleston for public purposes, 7 South Carolina Statutes at Large, 151; this statute which has been re-enacted on numerous occasions now appears as Section 2250 of the South Carolina Code of Laws for 1942.

In 1853 a suit entitled *James B. Campbell et al. v. City Council of Charleston* was brought in the Court of Common Pleas for Charleston County. The purpose of the suit was principally to require the area comprising the block situate between Beaufain Street on the north, Broad Street on the south, Rutledge Avenue on the east, and Ashley Avenue on the west (which is the area or block now occupied by Colonial Lake) to be set aside as a public "common" dedicated under the Act of 1768.

The City of Charleston by its answer in the *Campbell case* admitted that a large portion of the "common" lands had been sold, alleged that the Act of 1783 superseded the Act of 1768, and claimed that the City was entitled to sell

or lease the remainder of the "common" lands and further alleged that the City had always intended to reserve the area now constituting Colonial Lake for the perpetual use of the people of Charleston and offered and consented to do so. Pursuant to the City's consent, a decree was thereupon filed dedicating the area now constituting Colonial Lake as a "common" for the City of Charleston. There was no trial or reference held in the case.

The City made successive leases of the entire area bounded by Cummings Creek on the north, Broad Street on the south, Lynch Street (now Ashley Avenue) on the east and the channel of the Ashley River on the west, within which area the land in controversy is located, to several persons beginning in 1873, and in 1875 the City leased this area to Patrick P. Toale for a period of forty years. Thereafter, in 1877, a suit was brought by *Thomas O'Brien et al. v. City Council of Charleston and Patrick P. Toale.*

The complaint alleged that the only part of the "common" lands remaining unsold was that area bounded by Beaufain Street on the north, Broad Street on the south, Ashley Avenue on the east, and the Ashley River on the west.

The complaint did not seek to impugn the previous conveyances of "common" land but asked that such previous conveyances be confirmed; and the relief principally sought was that the said remaining area of the "common" land be forever reserved as a "common." The City did not answer the complaint but consented by its corporation counsel to a decree providing that all remaining marsh lands dedicated by the Colonial Government in 1768 as a "common," not already sold, shall be hereafter held as a "common" for the people of Charleston; that The City Council of Charleston should provide for the appointment of a Board of Commissioners to have the care and administration of the said "common" and the funds to be expended upon its improvements; and that the rights of the lessee Toale should in no way be affected by the suit. No trial or reference was held in this case.

Thereafter, by Ordinance ratified August 9, 1881, The City Council of Charleston established the Colonial Common and Ashley River Embankment Commission to have the care and administration of the "common."

In an Act approved February 13, 1911, 27 South Carolina Statutes at Large, p. 315, it is recited in the preamble that The City Council of Charleston contemplates the extension of the western water front of the City from a point at the foot of Tradd Street to Hampton Park on the Ashley River; and the filling in of low lands lying between the proposed western sea wall and the highlands of the City; and by said Act the State of South Carolina granted to The City Council of Charleston all the right, title and interest of the State of South Carolina in and to the land not theretofore granted lying between high water mark and the proposed sea wall along the Ashley River.

By another Act approved February 16, 1911, 27 South Carolina Statutes at Large, p. 316, the proposal to extend the western water front along the Ashley River is recited. It is provided that The City Council of Charleston when requested by the Board of Commissioners of the Colonial Common is authorized to sell such portions of the Colonial Common as may be declared by the said Commissioners of the Colonial Common and Ashley River Embankment Commission, and concurred in by City Council, to be no longer needed for the purpose of a "common."

By an Act of March 20, 1930, 36 South Carolina Statutes at Large, p. 1111, the State of South Carolina granted to The City Council of Charleston all right, title and interest of the State of South Carolina to lands lying between the channel of the Ashley River and the high water mark on the east shore of the Ashley River.

By another Act of March 20, 1930, 36 South Carolina Statutes at Large, p. 1270, it is provided that The City Council of Charleston is authorized and empowered with the consent and approval of the Commissioners of the Co-

lonial Common and Ashley River Embankment to sell for public or commercial purposes, all or any part of the vacant marsh lands and mud flats on the east side of the Ashley River theretofore set apart as a "common" by the Colonial Government; this act further provides that the consent and approval of the Commissioners of the Colonial Common and Ashley River Embankment shall be in writing and endorsed upon the deed of conveyance. This last mentioned Act has been codified as Section 2252 in the South Carolina Code of Laws, 1942.

The land in controversy is within the area covered by the above said Acts of February 13, 1911, 27 South Carolina Statutes at Large, p. 315, February 16, 1911, 27 South Carolina Statutes at Large, p. 316, March 20, 1930, 36 South Carolina Statutes at Large, p. 1111, and March 20, 1930, 36 South Carolina Statutes at Large, p. 1270.

By Act of May 28, 1949, Section 2252 of the Code of Laws for South Carolina, 1942, was amended so as to provide that in the event the Colonial Common and Ashley River Embankment Commission should fail or refuse within 15 days after written request of the Mayor of Charleston to give its consent to the sale of the whole or any portion of the said "common" lands; The City Council of Charleston by a two-thirds vote of those members present at any meeting of City Council shall have the authority to sell and convey the said lands without the consent of the Commissioners of the Colonial Common and Ashley River Embankment.

By resolution of The City Council of Charleston adopted at its regular meeting on June 21, 1949, The City Council of Charleston authorized and directed the Clerk of Council to offer for sale at public auction the land which is the subject of this action; the public auction was held and the property was sold to Worth Agency, agents, for Sergeant Jasper, Inc., for Five Thousand and no/100 ($5,000.00) Dollars. The Commissioners of the Colonial Common and Ashley River Embankment were duly notified by the Mayor of the proposed sale of the property and their approval of

the sale was requested. The Commissioners held a meeting and declined to approve of the sale and so reported to the Mayor; thereafter, at a meeting of City Council held on July 19, 1949, the Commissioners' unfavorable report was received and by a unanimous vote of The City Council of Charleston, the report was rejected, the sale of the land was approved and the Mayor was authorized and directed for and on behalf of The City Council of Charleston to execute and deliver under the corporate seal, attested by the Clerk of Council, a deed of conveyance to the said property. Pursuant thereto a deed of conveyance of the said property in fee simple was executed and delivered by City Council of Charleston to Sergeant Jasper, Inc., on July 19, 1949.

There is no question but that the lands in question were owned by the City of Charleston in fee simple, and that the conveyance to Sergeant Jasper, Inc., was made in a manner to conform to the provisions of Section 2252 of the Code as amended by the 1949 statute. The only other questions which we are called upon to decide are whether there was any impediment to the enactment of this legislation, and if not, whether the above stated purpose for which the land was sold to and acquired by Sergeant Jasper, Inc., is a "public or commercial purpose" within the terms of Section 2252 of the Code as amended.

As to the second of these questions no serious contention against the validity of the conveyance is made.

If such were not the case, the decision of this Court in the case of *Haesloop v. City Council of Charleston,* 123 S. C. 272, 115 S. E. 596, would settle the issue in favor of the defendants.

The plaintiff, however, contends that the conveyance to Sergeant Jasper, Inc., is *ultra vires* and abortive, and should be declared null and void, because of other alleged limitations on the power of the municipality to dispose of the property.

First, the plaintiff contends that the property in question was dedicated as a "common" by the Provincial Legislature

by the 1768 enactment above referred to. As already pointed out, Section 5 of said Act does declare that certain marsh land situate on the east side of Ashley River "shall hereafter be reserved and kept for the use of a common for Charlestown"; but the Act expressly limits this declaration to marsh lands situate "within the limits of Charlestown," and it is an admitted fact in the case that at the time of the enactment of the said Act the lands involved herein were not within the territorial limits of the municipality. Furthermore, the land involved is not "marsh land," but is a mud flat.

But even if the 1768 statute were applicable to the land involved herein, that consideration would be rendered wholly irrelevant by the fact that in the statute of 1783, which is above set forth and which, like the 1768 statute, covered public land "within the said City," the land was vested in the municipality, with power to sell the same "as to the said City Council might appear most conducive to the welfare and advantage of the said City, and the inhabitants thereof." It will hardly be questioned that in the present case the City Council could legitimately conclude that the tremendous addition to the taxable basis of the municipality that will be created by the apartment project, and the substantial relief that will be afforded the people of the municipality in connection with the general housing situation, are factors "conducive to the welfare and advantage of the said City, and the inhabitants thereof."

It is true that Section 2250 of the Code, representing the codification of successive statutes on the subject, provides that all vacant land not legally vested in individuals, in the harbor of Charleston, covered by water, "is vested in the city of Charleston, *for public purposes* * * *." (Emphasis added.) In the light of the *Haesloop case, supra,* the use of the expression "public purposes" in the present action may well be held to embrace the purposes for which the land in question was sold to Sergeant Jasper, Inc., but in view of the fact that other legislation on the subject, later

in date of enactment, modifies the quoted language of Section 2250 of the Code, it is a useless task to pursue this phase of the contentions made by the plaintiff.

Section 2252 of the Code explicitly provides that subject to the procedure therein set forth, the City Council is empowered at any time "to sell, convey and/or lease for public or commercial purposes all or any part of the vacant marsh lands and mud flats on the east side of Ashley River within the limits of the city of Charleston heretofore dedicated by the Colonial government as a common for Charles Town." Here we find power and authority, in unmistakable terms, to make the conveyance involved herein, except that the procedure involved in the exercise of the power requires the consent and approval "of the said commissioners of the Colonial common and Ashley River embankment." As already shown, this consent and approval were rendered unnecessary under the procedure prescribed by the 1949 statute. Admittedly, such procedure was followed in the present case.

The position of the plaintiff that the lands in question having been dedicated by the Provincial Legislature of South Carolina for a common, they are to be deemed forever so dedicated, even against legislation of the government of the State after the Revolution, is untenable. Historically and juridically, the lands embraced within the Province of South Carolina are vested by succession in the State of South Carolina with complete freedom on the part of the legislative arm of the State, subject only to constitutional limitations, to declare the ownership and use of all public lands within the boundaries of the State, and to provide for the retention and/or disposition of such lands in such manner as the State government might deem proper. And so long as private rights do not arise out of such legislative action, there can be no doubt about the fact that declarations of purpose as to the use of public lands, made by one legislature, cannot curtail the general governmental powers of subsequent legislatures to change such declarations of purpose. See *West*

*End Development Co. v. Thomas,* 92 S. C. 229, 75 S. E. 450.

As the Court said in that case: "\* \* \* The act of 1768 granted nothing. That act contained a reservation, and not a grant. The act merely declared the intention of the Legislature to keep the marsh land as a common and could not bind any other Legislature, even if it had not been passed before the adoption of the Constitution. The act of 1783 then gave the marsh land to the city council, to be sold, etc., as to the *city council shall appear most conducive to the welfare and advantage of said city and the inhabitants thereof.* \* \* \*"

A case like the present, involving the use, under legislative authority, of publicly owned lands which were not acquired under private grants containing restrictive provisions as to user, is of course to be distinguished from that class of cases in which private grants are made to a municipality or to the State for stated public purposes. See, for example, *Miller v. City of Columbia,* 138 S. C. 343, 136 S. E. 484. A dedication of land so made places the grantee, even though a public body, in the position of trustee. Such a trust will be strictly enforced. That class of cases, however, has no relevance here. In the case of public lands, which by legislative decree are set aside for a stated purpose, it obviously cannot be successfully contended that the exercise of legislative power to declare the nature of the user of the property at a given time, exhausted the power; in the absence of intervening conditions involving constitutional limitations, a succeeding General Assembly is not deprived of the power to either modify or eliminate the limitations of user previously imposed.

As stated in 39 Amer. Jur., p. 829, Sec. 34: "As a general rule, a municipality has no power to convey or sell land dedicated as a public park, square, or common, and the legislature is powerless to authorize such a sale. \* \* \* But where the fee is vested in the public, either by condemnation or otherwise, the legislature may,

as against the public and the property owners in the vicinity, control the use, although the use proposed is inconsistent with the one before designated. Hence, the legislature may discharge the city from the trust entirely and empower it to sell the land. * * *"

See also, 18 A. L. R., 1269 Anno., 44 C. J., p. 1100, Sec. 4022; *Haesloop v. City Council of Charleston, supra; Antonakas v. Anderson Chamber of Commerce,* 130 S. C. 215, 126 S. E. 35.

In the present case there is no suggestion that any private property right has been or will be impaired by the exercise by the City of Charleston of the powers vested in it by the legislation hereinabove referred to, or by the construction upon the property in question of the apartment project to which Sergeant Jasper, Inc., proposes to devote the property.

The plaintiff further contends that the exercise of any inherent power of the General Assembly, and of the municipality under the pertinent legislation, to sell the lands now in question to Sergeant Jasper, Inc., must be denied by reason of the decrees rendered in the Campbell and O'Brien suits hereinabove referred to. The decrees in these cases were consent decrees.

In the *Campbell case* the only pertinent result was the confirmatory dedication of the area now constituting Colonial Lake as a common for the City of Charleston. In no aspect of the case can the Circuit Court decree in the *Campbell case* be deemed to control the course of legislation relative to the land now in question, or the exercise by this Court of its power and duty to construe the applicable legislation and apply it to the specific lands involved in the present action.

Similar comments apply to the *O'Brien case.* See *West End Development Co. v. Thomas, supra.*

As above indicated we are satisfied that in making the conveyance in question, the City of Charleston acted within the power conferred upon it by the General Assembly,

and that its deed to Sergeant Jasper, Inc., vests in the latter a fee simple title to the property, free of any trust or restrictions as to user of the lands embraced thereby; and the temporary restraining order heretofore issued is revoked and dissolved.